**NATIONAL BANK OF DETROIT,**
Defendant-Appellant,

v.

**The WAYNE OAKLAND BANK,**
Plaintiff-Appellee.

**Ray M. GIDNEY, Comptroller of the Currency, Defendant-Appellant,**

v.

**The WAYNE OAKLAND BANK,**
Plaintiff-Appellee.

Nos. 13209, 13210.

United States Court of Appeals
Sixth Circuit.

Feb. 25, 1958.

Avram G. Adler, Philadelphia, Pa. (Fredman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

Mark D. Alspach, Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

George Cochran Doub, Paul A. Sweeney, and John G. Laughlin, Washington, D. C., Fred W. Kaess, U. S. Atty., Detroit, Mich., for appellant, Ray M. Gidney.

Sherwin A. Hill and Edward T. Goodrich, Detroit, Mich., Brownell, Gault & Andrews, Flint, Mich., for The Wayne Oakland Bank.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

PER CURIAM.

Appellants, National Bank of Detroit and Ray M. Gidney, Comptroller of the Currency, filed their petitions for rehearing en banc of the above cause, in which this court affirmed the judgment of the district court on the findings of fact and conclusions of law of Judge Lederle.

On the petitions for rehearing, appellants submit that this court did not pass upon the legality and efficacy of the Comptroller's approval of the application of the National Bank of Detroit for permission to establish and operate a branch bank; that the approval, alone, of the Comptroller was sufficient to give the right to establish and operate the bank; that the judgment of the district court,

as affirmed, is at odds with the authoritative interpretation of the law of the State of Michigan; and that appellee had "no standing" to bring the action. Most of the points set forth in the two petitions for rehearing en banc were the subject of considerable interrogation of counsel during argument and extensive discussion by the members of this court during the hearing, and all of the matters set forth in the briefs were determined adversely to appellants' contentions. Nevertheless, it has been thought proper to outline the grounds upon which the judgment was affirmed, with reference to the statements in the petitions for rehearing.

It appears, then, that The Wayne Oakland Bank, a state bank organized under the laws of Michigan, filed an application, on April 27, 1955, with the Michigan State Banking Commissioner to secure his approval to the establishment of a branch bank in the City of Troy, Michigan. On April 2, 1956, with the approval of the Commissioner, The Wayne Oakland Bank established a branch in Troy. At that time, no other bank had been established in that city.

On January 19, 1956, the National Bank of Detroit applied to the Comptroller of the Currency of the United States for permission to establish a branch at Troy; and on March 19, 1956, the Comptroller notified the National Bank of Detroit that its application had been approved. At the same time, the Comptroller sent a letter to the Michigan State Banking Commissioner, stating that he had approved the application of the National Bank of Detroit to establish a branch in Troy, Michigan.

The Wayne Oakland Bank in this case sought a declaratory judgment that it would be unlawful for the National Bank of Detroit to open a branch bank in Troy, after The Wayne Oakland Bank had established its branch there; and it further sought a restraining order to prevent the Comptroller from issuing a certificate of authority to the National Bank of Detroit, as well as an order restraining the latter from establishing and operating such a branch.

The district court held that, since The Wayne Oakland Bank had already opened, and had in operation, a branch in Troy, the subsequent establishment in the same city of a branch of another bank, such as the National Bank of Detroit, which was chartered to do business in another city, was prohibited by Title 12 U.S.C.A. Section 36, and Section 23.762 of the Michigan Statutes Annotated, and, accordingly, the district court issued the restraining orders sought, against the Comptroller, and the National Bank of Detroit.

We are of the opinion that, contrary to the contentions of the appellants, the Michigan statute (17 M.S.A. Section 23.762)[1] is here controlling; that the limitation therein contained as to branch banks applies, not only to state banks, but to national banks as well; and that Title 12 U.S.C.A. Section 36,[2]

---

1. "Sec. 34. Any bank having a capital of at least $50,000.00 may, with the written approval of the commission, establish and operate a branch or branches within a village or city other than that in which it was originally chartered: *Provided,* That the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in said county, then within 25 miles of said parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if such county has no bank: *Provided further,* That no such branch shall be established in a city or village in which a state or national bank or branch theerof is then in operation: * * *."

2. "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

not only did not empower the Comptroller to establish a branch of the National Bank of Detroit in Troy, Michigan, subsequent to the establishment in that city of a branch of The Wayne Oakland Bank, but, by clear implication, prohibited him from doing so.

Appellants contend that, by Title 12 U.S.C.A. Section 36(c), the National Bank of Detroit was permitted to establish the branch in Troy, Michigan, after The Wayne Oakland Bank had already opened a bank there with the approval of the Michigan State Banking Commissioner. The claim of the National Bank of Detroit is based upon the argument that Congress intended to permit a national bank to establish a branch at any point within the state at which the state law permitted the establishment and operation of a branch of a state bank, and that, since The Wayne Oakland Bank had established a branch in Troy, by authority of the State Banking Commissioner, the National Bank of Detroit could, therefore, establish a branch in the same city.

■ The history of federal legislation regarding branch banking and the statutes applying thereto leave a clear and definite impression that Congress intended, with respect to the location of branches, that a national bank should have no greater rights than it would if it were a state bank, and that a national bank was to be permitted to establish and operate a branch in a state only at such a point as it could, by express provisions of a state statute, establish and operate a branch if it were then a state bank. In spite of recommendations to Congress of the Comptroller of the Currency in 1922, 1923, 1924, and 1925, for laws granting national banks the privileges enjoyed in each state by state banks, Congress declined to enact such legislation. In 1927, Congress amended the banking statute and granted national banks the right to establish and operate branches, if such establishment and operation were, at the time, permitted to state banks by the laws of the state in question (Public Law No. 639. Sixtyninth Congress.) Later, in 1929, 1930, and 1931, similar proposals were made by the Comptroller. In 1932, the same recommendations were made, and the passage of a bill authorizing "national banks to establish branches at any place within the State in which such banks are located" was recommended by a majority of the Senate Committee on Banking and Currency. A minority report disagreed on this question of branch banking; and the bill failed of passage. In 1933, Congress finally passed the act containing 12 U.S.C.A. § 36 in its present form,[3] insofar as here pertinent.

■ The foregoing statute provides that a national bank may, "with the approval of the Comptroller of the Currency, establish and operate new branches: * * * at any point within the State in which said [bank] is situated, if such establishment and operation are *at the time* authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks." (Emphasis supplied.) In our view, the meaning of the foregoing statutory provision is that a national bank shall be permitted to establish an outside branch in a city if state law permits a state bank to establish and operate an outside bank, *at the time,* in the same city. If there were no other bank operating in Troy, the establishment of a state or national bank would, at that time, be permitted. In this case, however, there was already a branch of a state bank permitted by state law and established in the city of Troy. The Michigan statute [4] provided that, under the circumstances of this case, "no such

3. See footnote 2, ante.

4. Section 487.34, Compiled Laws of Michigan, 1948 (Section 23.762, Michigan Statutes Annotated, as amended, 1955 Cumulative Supplement.

branch shall be established in a city or village in which a state or national bank or branch thereof is then in operation." From the above, the conclusion follows that (1) the National Bank of Detroit could not, even with the approval of the Comptroller of the Currency, establish a branch in Troy, since the establishment of such a branch would not have been authorized, at the time, to state banks by the laws of Michigan by language specifically granting such authorizations affirmatively; and (2) that, since the branch of The Wayne Oakland Bank was established in Troy on April 2, 1956, no other branch could be established subsequent to that date by any other state or national bank. Appellants' claim that this conclusion results in discrimination against national banks seems irrelevant in the light of the statutes themselves. But to the contention that this discriminates against national banks in those cities where a state bank is the first to establish a branch, it can equally be said that the same discrimination operates against a state bank, when a national bank is the first to establish a branch.

In view of our determination as above set forth, it is not of controlling importance whether the Comptroller approved the application of the National Bank of Detroit, or not. But since much has been made of the claimed conclusive effect of the Comptroller's approval, a discussion of this aspect of the case seems proper, and, in this regard, a reference to the record is helpful.

It is undisputed that there was a working arrangement between the Comptroller of the Currency and the Michigan State Banking Commissioner, to the effect that the Comptroller would always notify the State Banking Commissioner of any application by a national bank for the opening of a branch, in the State of Michigan. Obviously, this was to avoid the Comptroller's approval of a branch of a national bank in a city in Michigan in which a state bank or its branch was already established, or had been approved by the Michigan State Banking Commissioner.

In this case, there was a deviation from this established practice. This deviation from the established practice of the Comptroller resulted from a meeting that took place when the officers and attorneys of the National Bank of Detroit, on February 3, 1956, went to Washington to have a conference on the matter with the officials of the Office of the Comptroller of the Currency. A memorandum of this conference, which was verified under oath by the Comptroller, appears in the evidence, and sets forth that the conference related to the application of the National Bank of Detroit to establish a branch in the city of Troy, Michigan. The memorandum went on to say that in June 1955, The Wayne Oakland Bank had already received permission to establish a branch in Troy, from the Michigan State Banking Commissioner; that, "due to the provisions of the Michigan statute limiting the establishment of branches, once a branch operation is commenced in Troy, no other outside bank could establish a branch there. Bank's counsel advised that prior to that time, however, there is no legal obstacle to the granting of permission to establish a branch. * * * The [attorneys and officers of the National Bank of Detroit] believe that there is sufficient business in Troy to warrant the successful operation of two branches, and further, do not believe that the establishment of a branch of their bank would be unfair to The Wayne Oakland Bank as they are not asking to keep another bank out of an area but are only asking that they themselves be let in to compete and protect existing business." Further continuing, the memorandum states: "Upon questioning * * * as to why the subject bank delayed so long in making application for a branch in Troy when it was known that Wayne Oakland Bank had received permission to establish a bank there last June, Mr. Bodman [General Vice President of the National Bank of Detroit] stated that recently it had been reported that the Detroit Wabeek Bank & Trust Company (H. O., Detroit, with branches at Birmingham and Fern-

dale), the Birmingham (Michigan) National Bank, and the Ferndale (Michigan) National Bank are to be consolidated into the Detroit Bank, which is the second largest bank in Detroit. It was this that precipitated the subject bank's application, as such a consolidation would change the nature of the competition in the subject area. Competition from The Wayne Oakland Bank was not considered serious, but if the Detroit Bank is able to place four offices within the area, as it would in the rumored consolidation, the [attorneys and officers] believed this proposed bank would be necessary to enable them to maintain their competitive position. The [attorneys and officers of the National Bank of Detroit] presented the formal application for the * * * branches, and requested that, regarding the one in Troy, that it be kept on a confidential basis and that we do not notify Commissioner Eveland, or contact any of the competing banks. The reason for the request was that the [attorneys and officers] were fearful of a leak through the State Commissioner's Office that the bank was after a branch, which would cause The Wayne Oakland Bank to hasten to open in temporary quarters in an attempt to legally block this application. The [attorneys and officers of the National Bank of Detroit] were informed that not to notify Commissioner Eveland of this application would be a deviation from our present working agreement with his office. Mr. Gidney [the Comptroller of the Currency] said that we would have an examiner make this investigation to determine the need for a branch and would instruct him to keep the investigation on a confidential basis * * *. It was understood that we would not contact Commissioner Eveland's office at this time. Accompanying this memorandum are formal requests, with related data and maps, covering the * * * applications to establish branches. It is understood that all investigations relative thereto, except the one in the city of Troy, are to be processed in the customary manner. As stated above, it is to be suggested to District Chief Examiner Rush that Examiner Flynn be assigned that investigation and that it should be conducted in a confidential manner."

About three weeks after the above conference, the vice president of the National Bank of Detroit wrote the Deputy Comptroller of the Currency, stating that, while the Comptroller's approval of the bank's application would have to be unconditional to be effective, the bank agreed that it would not open the branch in Troy unless the merger, discussed in the conference, was completed. On March 19, 1956, the Deputy Comptroller wrote the vice president of the National Bank of Detroit, stating that its application for permission to establish the branch in Troy was on that day approved. The letter went on to request that the bank advise the Comptroller when a definite opening date for the actual transaction of business had been decided upon; and what the exact street address would be, as well as the popular name by which the branch would be known. The letter continued: "The Comptroller's certificate authorizing establishment of the branch will be issued when that information has been received. It is understood, of course, that the branch should not be open until the certificate has been issued." Later, in April, 1956, when The Wayne Oakland Bank threatened the National Bank of Detroit with a lawsuit to prevent the opening by the latter of a branch bank, the vice president of the National Bank of Detroit, in a conference between the officers of the two banks and their attorneys, assured those present that the National Bank of Detroit would not open the branch in Troy, if the merger plans were not completed.

On May 29, 1956, the attorney for The Wayne Oakland Bank, in a conference with the Comptroller of the Currency in Washington, protested the latter's action regarding the National Bank of Detroit; and, in response, the Comptroller informed him that he had approved the branch on March 19, 1956; that his ap-

proval constituted an irrevocable commitment to the National Bank of Detroit authorizing the branch; and that a certificate would later be issued as a matter of course.

As late, however, as June 14, 1956, more than six weeks after The Wayne Oakland Bank had opened its branch in Troy, the representatives of the National Bank of Detroit were advising the president of The Wayne Oakland Bank that it would not open a branch in Troy if the proposed merger were not consummated.

It is the contention of appellants that when the Comptroller notifies a national bank that he approves an application for permission to establish a branch, that notification is alone sufficient to constitute the statutory approval required by Title 12 U.S.C.A. § 36(c); and that it makes no difference whether such branch is not opened, or is not ready to be opened, at the time the bank received such notification, or whether the bank seeking such approval does not intend to open the branch, except on certain contingencies, and so notifies the Comptroller at the time that it seeks his approval. Moreover, although the notification of approval by the Comptroller, in the instant case, was by letter, we assume, in the light of appellants' argument that their contention would be that it is immaterial whether such approval is by letter, telegram, or telephone.

The approval and consent of the Comptroller of the Currency are, by his Regulations, evidenced by a formal certificate. 12 Code of Federal Regulations, Section 4.5(a) (3), promulgated under Title 12 U.S.C.A., Section 1, provides:

"If the decision is unfavorable, the applicant bank is so notified. If the decision is favorable the Comptroller issues a formal certificate evidencing his approval and consent to the establishment and operation of a branch bank at the designated location."

No certificate of the Comptroller was issued in this case, prior to the opening of The Wayne Oakland Branch in Troy. The Comptroller informed the National Bank of Detroit that the branch should not open until the certificate was issued.

Since the only legal way in which the Commissioner's approval is evidenced is by his certificate, the branch of the National Bank of Detroit could not be said to be approved until the certificate was issued. A nod, a conversation, a telephonic communication, a telegram, or a letter does not suffice for the approval of the Comptroller, within the meaning of the statute.

Since there was no approval by the Comptroller of the application by the National Bank of Detroit, for the branch bank, within the intendment of the statute, there cannot be said to be any "establishment" of such branch within the statutory meaning of the term. The claimed finding of fact of the district court that the Comptroller had approved the application is, accordingly, of no consequence. In this regard, it is to be said that the district court found that the Comptroller had notified the National Bank of Detroit that its application had been approved, and stated that a certificate would be issued when he received further information. In any event, since no certificate had been issued, the matter is not important, in our view of the case.

All of the foregoing would seem to demonstrate the wisdom of cooperation between the state and federal banking authorities in matters affecting the approval, and the establishment, of state and national banks. Such cooperation appears to have been intended by Congress, and, in this case, by the Michigan legislature. The express provisions of the federal statute governing the establishment and operation of national banks look to what has been done by the state; and the express provisions of the state statute look to what has been done by the federal government. This accounts for the fact that there was a working agreement between the Comptroller of the Currency and the Michigan State Banking Commissioner to the effect that the Comptroller would always notify the State Banking Commissioner of any ap-

plication by a national bank for the opening of a branch in the State of Michigan in order to avoid the Comptroller's approval of a branch of a national bank in a city in Michigan in which a state bank or its branch was already established, or had been approved by the Michigan State Banking Commissioner.

It was the deviation by the national banking authorities from this established practice, at the request of the officers and legal counsel of the National Bank of Detroit that the Comptroller keep that Bank's application for a branch confidential and secret from the Michigan State Banking Commissioner, which resulted in the conflict in this case between the state and national banking authorities.

Appellants submit an opinion of a former Attorney General of Michigan as being authoritative in these proceedings, and contrary to the foregoing conclusions. If so, we are not persuaded by the views therein set forth; and it is to be remarked that the Michigan State Banking Commissioner has declined to follow such opinion in the official conduct of his office. Nor do we consider that the case of Muskegon Traction & Lighting Co. v. City of Muskegon, 167 Mich. 331, 132 N.W. 1060, supports appellants' contentions herein, that the branch of the National Bank of Detroit had been "established" by the letter of approval of the Comptroller prior to the opening of the branch of The Wayne Oakland Bank in Troy.

 As to the standing of The Wayne Oakland Bank to maintain its suit, it was faced with invasion of property rights, and injury from a competition which was prohibited by the federal statutes subjecting national banks to the same rules of law as cover state banks. The district court found, as a fact, that the competition resulting from the opening and operation of a branch by the National Bank of Detroit would certainly cause inestimable damage to The Wayne Oakland Bank. Whether the rights of a party are infringed by un-

lawful action of an individual or by exertion of unauthorized federal administrative power, it is entitled to have such controversy adjudicated.

 With regard to rehearings en banc, where the appeal is decided by a regular court of appeals, consisting of three judges only, a petition to rehear will not be considered by the court en banc. N. L. R. B. v. Cambria Clay Products Co., 6 Cir., 229 F.2d 433; Northwest Airlines, Inc. v. Glenn L. Martin Co., 6 Cir., 229 F.2d 434, 50 A.L.R.2d 882.

In accordance with the foregoing views, the petitions for rehearing are denied.