**FIRST NATIONAL BANK OF SMITH-FIELD, NORTH CAROLINA,**

v.

**FIRST NATIONAL BANK OF EASTERN NORTH CAROLINA and James J. Saxon, Comptroller of the Currency of the United States.**

Civ. No. 1460.

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 12, 1964.

Dupree, Weaver, Horton & Cockman, Jordan & Toms, Raleigh, N. C., E. V. Wilkins, Smithfield, N. C., for plaintiff.

Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., Venters & Dotson, Jacksonville, N. C., for First National Bank of Eastern North Carolina.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., John W. Douglas, Asst. Atty. Gen., Harland F. Leathers and R. Dickey

Hamilton, Attys., Department of Justice, Washington, D. C., for Comptroller of the Currency.

T. Wade Bruton, Atty. Gen., of North Carolina, Raleigh, N. C. (filed brief as amicus curiae).

BUTLER, Chief Judge.

This case presents the question whether the decision of the Comptroller of the Currency approving the establishment of a branch bank is subject to judicial review.

Plaintiff, First National Bank of Smithfield, and defendant, First National Bank of Eastern North Carolina, are both national banking associations established under the National Banking Act, Chapter 2, Title 12 U.S.C.A. The defendant Saxon is Comptroller of the Currency of the United States. The Attorney General of North Carolina was granted leave to appear as amicus curiae.

Defendant bank filed an application with the Comptroller for authorization to establish a branch in Smithfield, North Carolina, where the plaintiff is engaged in the banking business. Plaintiff informed the Comptroller that it was protesting the application and requested a hearing. The Comptroller invited plaintiff to his Washington, D. C. office in accordance with "informal administrative procedure", to present its views in opposition. A conference was held in the office of a Deputy Comptroller and plaintiff made the following requests:

(1) For an opportunity to examine the contents of the written application of the First National Bank of Eastern North Carolina to establish a branch in Smithfield.

(2) For an opportunity to examine the supporting data, if any, submitted with or subsequent to the filing of the application.

(3) For an opportunity to examine the contents of the report of the office of the Regional Bank Examiner reporting upon his examination of the application and his recommendation in regard thereto.

(4) For an opportunity to cross-examine witnesses offered in support of the application, if any.

Each of the requests was denied. Plaintiff then requested that it be furnished a copy of the decision of the Comptroller approving or disapproving the application of defendant bank. This request was likewise denied. Shortly thereafter, the Comptroller approved the application of defendant bank to open a branch in Smithfield.

The parties have stipulated as follows:

"As of the date of the application of First National Bank of Eastern North Carolina to establish a branch in Smithfield, and which is the subject of this action, there were no published Rules and Regulations of the Comptroller relating to procedures to be followed in passing upon such applications by national banking associations for the establishment of new branches.

"That no transcript was made of the * * * conference held in the office of Deputy Comptroller Redman, and that, therefore, no record of said conference is available to the court or either of the parties. No formal Findings of Fact were made by the Comptroller or his representative in connection with his approval of the application of the First National Bank of Eastern North Carolina to establish a branch in Smithfield.

"That the procedures followed and the positions taken by the Comptroller and his representatives at the * * * conference and throughout the processing of the subject application were consistent with the usual procedures and positions taken by that office."[1]

1. An affidavit of the Comptroller contains the following statement: "In deciding all applications the following factors are considered: the financial history and condition of the bank, the adequacy of its capital structure, its future earnings

Plaintiff instituted this suit seeking a declaratory judgment that the approval by the Comptroller of the application by defendant bank for the establishment of a branch at Smithfield was in violation of the capitalization requirements of Title 12 U.S.C.A. § 36, and that approval of said application without a hearing conforming to traditional standards of fairness as required by procedural due process of law was in contravention of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Plaintiff further seeks to enjoin the Comptroller from issuing a certificate of authority evidencing such approval and the defendant bank from establishing and operating a branch pursuant thereto.

Defendant bank moved to dismiss the complaint on the grounds (1) the complaint fails to state a claim upon which relief can be granted, and (2) the court is without jurisdiction. The Comptroller has also moved to dismiss, or in the alternative for summary judgment.

██ The defendants in their briefs contend that the plaintiff has no standing to challenge the Comptroller's administrative determination because the only possible injury to the plaintiff would be increased competition. It is true that the plaintiff could not complain of competition from a lawfully chartered bank or branch because its own charter is not an exclusive license. However, the threatened competition in this case will arise from the allegedly illegal decision of the Comptroller, and it is clear that the plaintiff has standing to invoke the jurisdiction of the federal court to challenge unlawful administrative action which would result in irreparable injury to its property rights. Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 116 U.S.App. 285, 323 F.2d 290 (C.A.D.C.1963); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6th Cir. 1958).

prospects, the general character of its management, the convenience and needs of the community to be served by the bank, whether or not its corporate powers are consistent with the purposes of

It is the contention of the defendants that all applications are processed by the Comptroller in accordance with informal administrative procedures; that no hearings are held and that none are required by law; that the Comptroller does not pass on an application on the basis of an official record which a court could review to determine arbitrariness, and that there is no judicial review of the Comptroller's determination.

Here plaintiff invokes the right of judicial review under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, which grants the court power in actual controversies to declare the rights of the parties, and under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

In Wong Yang Sung v. McGrath, 339 U.S. 33, 36, 70 S.Ct. 445, 448, 94 L.Ed. 616, Mr. Justice Jackson, speaking for the Supreme Court, said:

"The Administrative Procedure Act of June 11, 1946, supra, is a new, basic and comprehensive regulation of procedures in many agencies, more than a few of which can advance arguments that its generalities should not or do not include them. Determination of questions of its coverage may well be approached through consideration of its purposes as disclosed by its background.

"Multiplication of federal administrative agencies and expansion of their functions to include adjudications which have serious impact on private rights has been one of the dramatic legal developments of the past half-century. Partly from restriction by statute, partly from judicial self-restraint, and partly by necessity—from the nature of their multitudinous and semi-legislative or executive tasks—the decisions of administrative tribunals were accorded considerable finality, and es-

the Federal Banking Laws, and the effect of the transaction on competition including any tendency toward monopoly."

pecially with respect to fact finding. The conviction developed, particularly within the legal profession, that this power was not sufficiently safeguarded and sometimes was put to arbitrary and biased use.

"Concern over administrative impartiality and response to growing discontent was reflected in Congress as early as 1929, when Senator Norris introduced a bill to create a separate administrative court. Fears and dissatisfactions increased as tribunals grew in number and jurisdiction, and a succession of bills offering various remedies appeared in Congress. Inquiries into the practices of state agencies, which tended to parallel or follow the federal pattern, were instituted in several states, and some studies noteworthy for thoroughness, impartiality and vision resulted.

"The Executive Branch of the Federal Government also became concerned as to whether the structure and procedure of these bodies was conducive to fairness in the administrative process. * * *

"The Act thus represents a long period of study and strife; it settles long-continued and hard-fought contentions, and enacts a formula upon which opposing social and political forces have come to rest. It contains many compromises and generalities and, no doubt, some ambiguities. Experience may reveal defects. But it would be a disservice to our form of government and to the administrative process itself if the courts should fail, so far as the terms of the Act warrant, to give effect to its remedial purposes where the evils it was aimed at appear.

"Of the several administrative evils sought to be cured or minimized, only two are particularly relevant to issues before us today. One purpose was to introduce greater uniformity of procedure and standardization of administrative practice

among the diverse agencies whose customs had departed widely from each other. We pursue this no further than to note that any exception we may find to its applicability would tend to defeat this purpose."

Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, provides:

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including *actions for declaratory judgments* or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. * * *

"(c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. * * *"

■ The only exceptions to the right of judicial review of agency action exist where "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." Neither exception can be held applicable in this case. There is nothing in the National Banking Act that expressly precludes judicial review within the purview of the first exception to § 10 of the Administrative Procedure Act.

■ Section 36(c) of the National Banking Act provides: "A national banking association may, with the *approval* of the Comptroller of the Currency, establish and maintain new branches * * *" If the use of the word "approval" is deemed to commit agency action to agency discretion within the meaning of the

second exception to § 10, nevertheless it must be a sound discretion exercised in a manner that is not violative of procedural due process.

In Heikkila v. Barber, 345 U.S. 229, 232, 73 S.Ct. 603, 604, 97 L.Ed. 972, the Supreme Court said:

"Apart from the words quoted, the Administrative Procedure Act itself is silent on which 'statutes preclude judicial review.' Both the Senate and the House Committee Reports on the Act commented that 'Very rarely do statutes withhold judicial review.' And the House Report added that 'To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.' The spirit of these statements together with the broadly remedial purposes of the Act counsel a judicial attitude of hospitality towards the claim that § 10 greatly expanded the availability of judicial review."

Justices Jackson and Frankfurter in a dissenting opinion in Shaughnessy v. United States, 345 U.S. 206, 224, 73 S.Ct. 625, 635, 97 L.Ed. 956, discussing generally the subject of procedural due process, say:

"Procedural fairness, if not all that originally was meant by due process of law, is at least what it most uncompromisingly requires. Procedural due process is more elemental and less flexible than substantive due process. It yields less to the times, varies less with conditions, and defers much less to legislative judgment. Insofar as it is technical law, it must be a specialized responsibility within the competence of the judiciary on which they do not bend before political branches of the Government, as they should on matters of policy which compromise substantive law.

"* * * Procedural fairness and regularity are of the indispensable essence of liberty. Severe substantive laws can be endured if they are fairly and impartially applied. Indeed, if put to the choice, one might well prefer to live under Soviet substantive law applied in good faith by our common-law procedures than under our substantive law enforced by Soviet procedural practices. Let it not be overlooked that due process of law is not for the sole benefit of an accused. It is the best insurance for the Government itself against those blunders which leave lasting stains on a system of justice but which are bound to occur on *ex parte* consideration."

Congress undoubtedly has the power to entrust the final determination of the facts in certain cases to administrative agencies, and to make administrative decisions non-reviewable to the fullest extent possible under the Constitution. It is equally clear that the administrative procedure in such cases must conform to the requirements of procedural due process of law which requires at least a hearing after notice and that the findings are supported by substantial evidence and that the decision is not arbitrary, capricious, or illegal.

Granting the Comptroller of the Currency a specialized knowledge in the field of banks and banking and that his decisions should stand if supported by substantial evidence and do not exceed his statutory authority, nevertheless, where, as here, there was no hearing, no record of the proceedings and no findings of fact, but only a bare decision, it cannot be determined whether his acts were arbitrary or illegal.

If it be conceded that in a given case the action of the Comptroller in approving or denying an application to establish a branch bank is legally sound and correct, the procedure followed in reaching the result is of utmost importance if we are to preserve the fundamental fairness characteristic of our system

and essential to the preservation of our rights as a people. Upon application for review of agency action, it becomes "a specialized responsibility within the competence of the judiciary" to determine if the aggrieved party has been accorded procedural due process. Where the Act in question and the regulations, if any, adopted pursuant thereto, do not provide for a hearing or review, the Administrative Procedure Act should be so construed as to demonstrate an "attitude of hospitality" toward judicial review, especially where such construction may be necessary to insure the Act from constitutional attack. Any provision of the National Banking Act that would deny procedural due process would raise a serious constitutional question. Considering the legislative history of the Administrative Procedure Act and the intent of Congress in its enactment, the Act is sufficiently elastic to provide procedural due process in the administration of the National Banking Act.

Since an Act should be so construed as to preserve its constitutionality, it becomes imperative, under the view here taken, to hold that the Administrative Procedure Act is applicable to the Comptroller of the Currency in proceedings under § 36 of the National Banking Act.

This view finds support in Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6th Cir. 1962), in which the court held the Comptroller's decision reviewable under 5 U.S.C.A. § 1009. See, also, Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 323 F.2d 290 (C.A.D.C.1963); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6th Cir. 1958), cert. denied 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 69; Suburban Trust Co. v. National Bank of Westfield, 211 F.Supp. 694 (D.C.N.J.1962); Commercial State Bank of Roseville v. Gidney, 174 F.Supp. 770 (D.C.D.C.1959).

The Comptroller contends that if he is required to hold "formal, public hearings on branch applications, such a requirement would place an impossible administrative burden on the Comptroller's office as it is now constituted." The short answer is that any administrative burden incident to procedural due process cannot be deemed sufficient grounds to deprive parties of constitutional rights. The Administrative Procedure Act provides a solution. Section 11 of the Act authorizes the appointment of as many examiners as may be necessary for proceedings incident to the hearings and initial decisions.

Plaintiff further contends that the Comptroller violated § 36(c) of the National Banking Act in granting defendant bank's application in that it lacked sufficient capital to meet the statutory requirements for the establishment of the proposed branch. The parties have stipulated that subsequent to the filing of the application by defendant bank and its approval by the Comptroller, the capital was increased to an amount sufficient to satisfy the capital requirements. In view of the decision in this case, we do not reach that question.

The material facts pertinent to the decision in this case are uncontested. An application of the law to the conceded facts compels the conclusion that the defendants' motions to dismiss and the Comptroller's motion for summary judgment are denied, and that plaintiff is entitled to a preliminary injunction restraining the Comptroller from issuing a certificate of authority to defendant bank to operate a branch in Smithfield, and restraining the defendant bank from establishing and operating said branch.

The plaintiff's counsel shall prepare a judgment and order in accordance with this opinion for presentation to the court at 9:30 a. m., August 24, 1964.