246 So.2d 382 (1971)
FIRST NATIONAL BANK OF ABBEVILLE et al.
v.
Clem H. SEHRT, State Bank Commissioner, State of Louisiana.
No. 8381.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
Rehearing Denied April 19, 1971.
Writ Refused June 2, 1971.
*383 Carlos G. Spaht, of Kantrow, Spaht, Weaver & Walter, Baton Rouge, Roger C. Edwards, Abbeville, Oliver P. Stockwell, of Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, for appellants.
Ben Daly Bridgeman, New Orleans, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
Rehearing En Banc Denied April 19, 1971.
ELLIS, Judge.
This is a suit by three banks operating in the Abbeville area of Vermillion Parish to enjoin Clem H. Sehrt, then State Bank Commissioner, from issuing a certificate of authority to Gulf Coast Bank to operate in Abbeville. From an adverse judgment, they have appealed.
The record shows that application for the certificate of authority was filed with the Commissioner, and that an investigation was made by the Chief Bank Examiner, who rendered a report to the Commissioner. Plaintiffs herein requested a formal hearing on their opposition, which was denied. However, the Commissioner did have an informal hearing in his office on *384 December 4, 1969, at which plaintiffs presented their opposition. After considering the evidence, the Commissioner issued a conditional certificate of authority, on December 11, 1969. This suit was filed on February 12, 1970, asking that the Commissioner be enjoined from issuing the final certificate of authority.
The trial court held that he could reverse the decision of the Commissioner only if it were arbitrary or capricious, and that he was unable to reach that conclusion on the basis of the evidence presented.
Plaintiffs applied for a new trial, claiming that they were entitled to a formal hearing before the Commissioner under the Administrative Procedures Act, R.S. 49:951 et seq., and that they were denied due process of law because the hearing was not granted. They re-urged their contention that the Commissioner's decision was arbitrary and capricious because the hearing was not granted. They re-urged their contention that the Commissioner's decision was arbitrary and capricious because not based on substantial evidence. The new trial was denied, and this appeal followed.
R.S. 49:955 (A) provides that:
"In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice."
R.S. 49:951 contains the following provisions:
"As used in this Chapter:
"(1) `Adjudication' means agency process for the formulation of a decision or order
"(3) `Decision' or `order' means the whole or any part of the final disposition * * * of any agency, in any matter other than rule making, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing * * *."
The foregoing can only be construed to make the Act applicable only when a hearing is presently provided for by law. It does not create the right to a hearing when none is presently required. It provides the procedures to be followed when holding administrative hearings otherwise required by law.
There is no statutory requirement that the Commissioner hold hearings. His authority is set forth in R.S. 6:241, as follows:
"Before issuing a certificate of authority to any banking association or savings bank, the commissioner shall examine the qualifications, responsibility, and standing of the persons organizing the association or bank. If he finds that the public interest will not be subserved by permitting such persons to organize the association or bank, he shall refuse to issue the certificate."
Plaintiffs concede the foregoing, but claim to be entitled to a hearing under the due process clauses of the 14th Amendment to the Constitution of the United States and Article I, Section 2 of the Louisiana Constitution. These provide, of course, that no person may be deprived of life, liberty, or property without due process of law.
We can see no denial of due process in this case. Primarily, we do not believe that the due process clause can be invoked to prevent lawful competition. It can hardly be argued that there is a deprivation of property simply because another bank might be established in the area. Plaintiffs have no vested interest in the banking business of their area, and hold no exclusive franchise.
Second, we find that the requirements of due process have been satisfied herein. No one questions the absolute right of the Legislature to regulate banking and to provide the means for the establishment of banks within the State. It has chosen to delegate this authority to the State Bank *385 Commissioner. His determinations in this respect are subject to judicial review and opponents have standing to demand the same under Article I, Section 6 of the Louisiana Constitution, which provides:
"All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."
Similar procedures provided by both State and Federal laws have been upheld as providing due process. Webster Groves Trust Company v. Saxon, 370 F.2d 381 (8th Cir. 1966); Cement National Bank v. Dept. of Banking, 425 Pa. 554, 230 A.2d 209 (1967).
In this case, the Commissioner, by giving plaintiffs an informal hearing, has done more than he is required by law to do. Plaintiffs' recourse is to judicial review if they are not satisfied with the decision reached by him. The scope of judicial review of the decisions of administrative agencies is set forth in Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3 Cir. 1965), as follows:
"Generally, the scope of judicial review of administrative agencies, although varying with the statutes involved, is limited to a determination of whether the action of the agency was: (1) in accordance with the authority and formalities of the statute; (2) supported by substantial evidence; and (3) arbitrary or an abuse of discretion."
It is also true that a presumption of validity attaches to administrative enactments, and the burden of proving the invalidity thereof falls on the opponents. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950).
The Commissioner based his decision on the following items:
(1) The application submitted by the proponents of the bank
(2) An economic report furnished him by the proponents
(3) A personal visit made by him to Abbeville
(4) An economic report submitted by the opponents, plaintiffs herein
(5) An informal hearing granted by him to the opponents
(6) The report of the investigation made by the Chief Bank Examiner
The report submitted by the Chief Bank Examiner showed that he considered the deposit growth projected by the proponents was double his own estimate, based on experience of other banks. He felt the future earnings prospects to be unsatisfactory, and the need for an additional bank to be marginal. He found all other factors to be favorable. He made no recommendation, being of the opinion that the decision could go either way.
The economic report submitted by the opponents, as well as all of their other evidence, was unfavorable to the need for a third bank in Abbeville, and as to the ability of the economy to support such a bank.
The economic report submitted by the proponents drew the opposite conclusion. This report was objected to by opponents as constituting hearsay evidence, since it was offered without supporting testimony. However, in view of the presumption of validity which attaches, we think the burden is on the opponents to discredit the report, and that they failed to bear the burden.
The statistics produced showed Abbeville and Vermillion Parish to be declining in population and business activity, and that, at best, the economy of the area is stable. On the other hand, bank deposits were increasing steadily.
Based on the foregoing, we believe that there was substantial evidence on which the Commissioner based his conclusion, and that his action in issuing the certificate *386 of authority was not arbitrary or an abuse of discretion.
The judgment appealed from is affirmed, at plaintiffs' cost.
Affirmed.
LANDRY, Judge (dissenting).
I dissent from the majority decision which affirms the trial court's ruling to the effect that the Administrative Procedure Act, LSA-R.S. 49:951-966, inclusive, is inapplicable in this instance, and that appellants were not entitled to an adversary hearing. In so holding, the majority conclude, on authority of Webster Groves Trust Company v. Saxon, 370 F.2d 381 (8th Cir. 1966), and Cement National Bank v. Dept. of Banking, 425 Pa. 554, 230 A.2d 209 (1967), that due process requirements do not dictate the right to an adversary hearing in a matter of this nature. It is my opinion that the cited authorities are not controlling herein.
The record in this instance shows that the Commissioner was expressly requested to grant appellants an adversary hearing, but that the proposal was rejected. It further appears that at the informal office hearing granted by the Commissioner, appellants were denied access to an economic report submitted in support of the application in question.
A mere reading of LSA-R.S. 49:951 et seq. discloses legislative intent to formulate broad guidelines governing the rule making and adjudicatory authority of all state officers, boards, commissions and departments save those expressly excluded from the effects thereof.
Section 951(2) defines agency as follows:
"`Agency' means each state board, commission, department or office authorized by law to make rules or to formulate and issue decisions and orders except:
(a) The legislature or any branch, committee or officer thereof;
(b) The courts;
(c) The Department of Public Welfare, Department of Conservation, Department of Revenue, Division of Employment Security, Department of Labor, the Department of Hospitals and the State Mineral Board, and the Department of Highways."
Paragraph (3) of Section 951 defines a decision or order of an administrative agency or officer as follows:
(3) "`Decision' or `order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing." (Emphasis supplied.)
In holding the act inapplicable to the State Bank Commissioner (Commissioner), the majority affirm the lower court's ruling that Section 951(3) provides that the statute applies only to orders or decisions which are required by the constitution or statute to be preceded by notice and opportunity for hearing. The majority apparently conclude that since neither the statute creating the office of Commissioner nor the state constitution expressly require notice or hearing prior to issuance of a Commission order, the act in question does not apply to the Commissioner.
The obvious purpose of the act is to provide an orderly procedure for hearing persons whose rights or property will be affected by administrative decisions. To hold, as does the majority, that the act applies only when the right to hearing and notice is expressly granted, renders the statute virtually meaningless. I do not deem this to be the legislative intent in *387 view of the statute's broad provisions. Moreover, since the fundamental purpose of the act appears to be recognition and enforcement of the basic rules of fair play, I believe the statute should be liberally construed to achieve the intended result.
I believe the Commissioner falls squarely within the terms of the act. Unquestionably, his office is included within the definition of "Agency" as contained in LSA-R.S. 49:951, Section 1(2), and is not included in the exceptions contained in subparagraphs (a), (b) and (c) of that same section.
Article 1, Section 2, of our State Constitution, and Section 1 of the Fourteenth Amendment of the United States Constitution, guarantee that no person shall be deprived of life, liberty or property without due process of law.
The highest judicial tribunal of this nation has squarely held that the basic concepts of "fair play", as embodied in the due process clause of the Federal Constitution, apply to the rulings of administrative agencies. In re Morgan et al. v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129. Morgan, above, invalidated rates imposed by the Secretary of Agriculture because of failure to afford the affected party a "full hearing". Morgan expressly held that the right to a hearing involves not only the right to present evidence, but also to know and meet the claims of one's adversaries, otherwise the right may be barren. Morgan notes that Congress, in providing for a full hearing, envisioned judicial standards, not in a technical sense, but with regard to the fundamental requirements of fairness which are of the essence of due process. I note in Morgan the following pertinent language:
"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."
More recently, in Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, petitioner's security clearance was revoked in an administrative proceeding wherein confrontation and cross-examination of witnesses were not permitted. The Court determined the issue to be whether the Department of Defense was authorized to create an industrial security clearance program under which affected parties may lose their jobs and be restrained from following their professions on the basis of fact determinations of fitness made in proceedings wherein there was denial of the traditional safeguards of confrontation and cross-examination. The court found that the Department of Defense had not been so authorized. The court noted that where administrative action raises serious constitutional problems, it will be assumed that Congress or the Chief Executive intended to afford affected parties the traditional safeguards of due process. Numerous authorities were cited in support of the proposition advanced and followed by the observation that the cited cases reflect the court's concern that traditional forms of fair play not be restricted by implication, even in areas where it is possible that the Constitution presents no inhibition. To the same effect, see United States v. Weller, D.C., 309 F.Supp. 50.
In Garvey v. Freeman, 10 Civ., 397 F.2d 600, it was held that although rules of evidence and procedure are inapplicable and inappropriate in an administrative proceeding designed to determine petitioner's allowable per acre wheat yield for the year 1965, due process, including confrontation and cross-examination, should obtain in such a proceeding. In so holding, the court *388 in Garvey, above, relied upon Greene v. McElroy and Morgan v. United States, above.
I deem it significant that Section 966, subd. A of the statute under consideration recites:
"Nothing in this Chapter shall be held to diminish the constitutional rights of any person or to limit or repeal additional requirements imposed by statute or otherwise recognized by law. * * *" (Emphasis supplied.)
I likewise note that our Supreme Court has held that, with few exceptions, the essential elements of due process require that notice and opportunity to be heard in an orderly proceeding, adapted to the nature of the case, is required when one's property or rights are to be affected by an administrative adjudication. Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162.
On the Federal level, it has been suggested that denial of the right to hearing and confrontation of adversaries is justifiable when some grave national interest is served thereby and congressional and executive authorization to deny such rights is express and clear. Greene v. McElroy, above. Where the hearing is purely investigatory, as distinguished from adjudicatory, the Federal Courts have upheld denial of a hearing and confrontation of witnesses. Hannah v. Larche, and Hannah v. Slawson, 363 U.S. 420, 80 S.Ct. 1502, 4 L. Ed.2d 1307; Clifford v. Shoultz, 9 Cir., 413 F.2d 868.
On the contrary, however, based primarily on the provisions of applicable Federal Banking Statutes, the Federal Courts have held that notice and hearing are not indispensable to due process insofar as concerns applications for bank charters and branch banks. Northwest Bancorporation v. Board of Governors of Federal Reserve System, 8 Cir., 303 F.2d 832; Bridgeport Federal Savings and Loan Association v. Federal Home Loan Bank Board, 3 Cir., 307 F.2d 580; Webster Groves Trust Company v. Saxon, 8 Cir., 370 F.2d 381; Citizens Bank of Hattiesburg v. Camp, 5 Cir., 387 F.2d 375. It is on these authorities that the majority rely.
I note, however, that Camp, above, is authority for the rule that, even in a fact gathering procedure, due regard should be accorded the right of a party to know and meet opposing evidence with explanatory or rebuttal evidence.
In Northwest Bancorporation, above, it was held that the Board involved could deny, without hearing, an application for approval of acquisition of bank stock where there was an absence of dispute as to basic facts and applicant had been afforded opportunity to present whatever facts, data and argument is desired.
In First National Bank of Smithfield v. First National Bank of Eastern North Carolina, D.C., 232 F.Supp. 725, a competitor, objecting to establishment of a branch bank, was held entitled to a trial type hearing. However, on appeal the Fourth Circuit disposed of the issue by allowing de novo judicial review in preference to granting an administrative hearing. See 352 F.2d 267.
The views expressed by Sobeloff, J., dissenting from the opinion rendered in First National Bank of Smithfield, above, points out that the right to appeal and judicial review in such instances is meaningless unless an effective opportunity to be heard has been afforded by the administrative agency. Judge Sobeloff noted that under Federal Rules of Review, an administrative finding can be set aside only if it is shown to be arbitrary or capricious. In essence, the same rule applies in our own jurisdiction. State ex rel. Carter v. Louisiana State Board of Dentistry, La.App., 90 So. 2d 899; Palfrey v. Carlisle, La.App., 29 So.2d 185. Judge Sobeloff further notes that if the objector has not been granted a chance to present his position before the matter reaches the courts, a protest will be of little avail in view of the rule that administrative determinations are clothed *389 with the presumption of correctness and the burden rests on the protester to demonstrate that the administrator acted arbitrarily. This same rule obtains in our own jurisdiction. Louisiana & Arkansas Railway Company v. Louisiana Public Service Commission, 242 La. 67, 134 So.2d 551; Railway Express Agency, Inc. v. Louisiana Public Service Commission, 243 La. 518, 145 So.2d 18.
Camp, above, is readily distinguishable on the ground that the opponent concerned did not request a contradictory hearing.
As pointed out by Professor Kenneth Culp Davis, in his work entitled Administrative Law Treatise, Volume 1, Ch. 4, § 4.04, page 247, et seq., it is somewhat anomalous that the Federal Courts have consistently dispensed with the right to hearing and confrontation in the field of banking while at the same time holding that due process requires a hearing and the right to confrontation in other areas such as the licensing of television broadcasting stations and airline routes. As Professor Davis notes, the question of public need and interest is approximately the same in each instance. As Mr. Davis further aptly notes, the basic consideration in each instance is whether the procedure employed effectively protects the public interest involved. It appears to me that in the field of banking, the public interest is at least as great, if not greater, than in areas involving television stations and airlines. Banks not only handle and invest funds belonging to private individuals; banks serve as depositories of public funds. Granted that an informal hearing may be adequate where specific factual issues are not in controversy. However, where facts are in dispute, the most effective means of resolving the controversy would appear to be by hearing which affords cross-examination of one's adversaries. In this way the administrative agency will be assured of a full disclosure of all pertinent circumstances. If hearing and confrontation are denied, it may well result in an administrative determination based on disclosure of only such facts as are favorable to one party; this result does not accord with the fair play concept of constitutional due process provisions.
The innumerable authorities dealing with the due process principle establish no formula whereby it can be determined whether or not notice and hearing must precede administrative action.
Professor Frank E. Cooper, in his work State Administrative Law, Vol. 1, Section 3, page 140, et seq., suggests that in instances of this nature the following be considered operative factors:
(1) A balancing between the public need and interest permitting summary action to obtain expeditious realization of the objectives which an agency seeks to accomplish, and the protection of the countervailing private interests of affected parties;
(2) the traditional approach that has been followed in a given administrative field;
(3) whether and the extent to which private rights and property are affected by administrative action;
(4) whether a formal or informal hearing is most likely to reveal the salient factors upon which an administrative decision should be postulated;
(5) the confidence which the courts have in a given administrative agency;
(6) whether there is adequate opportunity upon review for correction of administrative errors, and
(7) whether the administrative agency is acting in what is traditionally considered the administrative or executive realm.
I do not consider the Federal authorities relied upon by the majority to be controlling in a state's application of its own constitutional due process clause. The cited cases apply Federal minimal due process standards to Federal Banking Statutes. The unmistakable import of United States Supreme Court decisions indicates that the *390 minimal requirements of Federal due process may be broadened and expanded, within certain limitations, under the due process clauses of the respective state constitutions. Bute v. Illinois, 333 U.S. 640, 68 S. Ct. 763, 92 L.Ed. 986; Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L. Ed.2d 663. Although both Bute and Rideau, above, involve application of due process to the field of criminal law, the principles announced therein apply with equal force to the ambit of civil law. The only restriction placed upon the states to broaden the Federal minimal concepts of due process is that the requirements imposed to met due process do not themselves result in a deprivation of due process by placing an impossible or unconscionable burden upon the parties affected.
If invocation of due process in this instance represents a broadening or enlargement of that principle based on state constitutional requirements, I find such a result justifiable considering the nature of banks, the public trust reposed in such institutions, and the fact that public funds are deposited therein.
Federal jurisprudence holds that where administrative regulations themselves prescribe standards of procedural due process higher than imposed by constitutional or statutory provisions, violation of the administrative requirements amounts to violation of administratively established due process. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681; Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Jeffries v. Olesen, D.C., 121 F.Supp. 463. If administrative agencies can broaden due process requirements by the force of their own regulations, it appears unquestioned to me that courts, as interpreters of constitutions, are charged with the responsibility of expanding state due process commensurate with the nature of each case and within the limits set by the Federal Supreme Court. I fail to see wherein any undue burden would be placed on appellee herein by the requirements of an adversary hearing before the Commissioner.
Applications for bank charters present no urgency of fulfillment of an imminent public need. The delay occasioned by a hearing in such instances will not result in irreparable injury to the proponents. On the contrary, the nature of banks is such that new institutions must be chartered with caution and only after a showing of public need for additional such facilities. In my view, an adversary hearing, as opposed to an ex parte hearing of the proponents, is more likely to result in a full disclosure of salient facts. As pointed out by the Commissioner herein, the economic report submitted by appellees presents an exaggerated favorable picture, whereas that of appellants exaggerates a pessimistic outlook. Unquestionably, the truth lies somewhere between. The true circumstances could have been determined with greater accuracy had there been an adversary hearing with each side afforded the opportunity of cross-examination. Had this procedure been followed, the courts, upon review, would have been better able to evaluate the propriety of the Commissioner's determination.
It is noteworthy that LSA-R.S. 49:964, subd. F provides that judicial review of an administrative determination "shall be confined to the record." This appears logical because the statute affords a full adversary hearing before the agency involved. Presumably, all interested parties have been heard and have cross-examined opposing witnesses. Under these circumstances, the court can, on the record made up before the agency, determine whether the ruling under review meets the test of validity set forth in Section 964, subd. G.
Under our present jurisprudence, a party seeking judicial review must overcome the presumption of validity accorded a ruling made against his interests without his having been afforded an opportunity to fully present his position to the agency charged with the responsibility of ruling thereon. *391 Thereafter, upon judicial review, the propriety of the administrative ruling is determined in the light of testimony which the administrator did not hear. It seems patently anomalous that in such instances the reasonableness and validity of the administrative ruling is not determined upon the exact same testimony presented to the agency making the adjudication.
In my judgment, the Commissioner's ruling in this instance should be reversed and set aside and this matter remanded to the Commissioner for a full adversary hearing pursuant to LSA-R.S. 49:951, et seq.
I respectfully dissent.