**COMMERCIAL SECURITY BANK,**
Plaintiff,

v.

**James J. SAXON, Comptroller of the Currency, Defendant,**

**First Security Bank of Utah, N.A., Intervenor-Defendant.**

**Civ. A. No. 1815-63.**

United States District Court
District of Columbia.

Dec. 18, 1964.

James F. Bell, Washington, D. C., for plaintiff.

John W. Douglas, Asst. Atty. Gen., Department of Justice, Washington, D. C., and David C. Acheson, U. S. Atty., Washington, D. C., for defendant.

Charles J. Steele, Washington, D. C., for intervenor-defendant.

LEONARD P. WALSH, District Judge.

This matter came before the Court on the motion to dismiss filed by defendant Comptroller and the cross motions for summary judgment of Intervenor and Plaintiff.

**458**

The relevant facts are not in dispute and can be stated as follows:

Plaintiff, a state bank, and Intervenor, a national bank, each have their principal office and one branch in the city of Ogden, Utah. Two other state banks have their main offices in Ogden, the Bank of Utah and the Bank of Ben Lomand. Since Ogden has a population of between 30,000 and 90,000 persons, it is classified as a city of the "second class" by the Utah Cities and Towns Statute (Utah Code Ann., Title 10, Chap. 1, Sec. 1 (1953, as amended)).

On June 25, 1963, the First Security Bank, Intervenor, filed an application with the Comptroller of the Currency, pursuant to Title 12 United States Code, Section 36(c), requesting permission to establish an additional branch office in Ogden. The requested branch would be in addition to the four main bank offices and two branches presently in existence in Ogden. Shortly thereafter, on July 18, 1963, the Commercial Security Bank brought this action against the Comptroller, seeking a declaratory judgment that approval of the branch application would violate 12 U.S.C.A. § 36, and an injunction to restrain the Comptroller from issuing the certificate evidencing approval of the branch. In addition, plaintiff sought preliminary injunctive relief pending disposition of the case.

Judge Curran on July 19, 1963, issued a temporary restraining order prohibiting the Comptroller from issuing a certificate of authority to First National. Prior to the expiration date of that order, on July 26, 1963, counsel for Commercial Security and the Comptroller filed a Stipulation with the Court by which it was agreed:

"* * * that the Comptroller of the Currency will issue no certificate of authority to the First Security Bank of Utah until the District Court has heard Commercial Security Bank's pending motion for a preliminary injunction * * * that if counsel for the Comptroller of the Currency notifies James F. Bell, Esq., of the Comptroller's intention

to issue the certificate, Commercial Security will apply to the Court for the earliest possible hearing on its pending motion for preliminary injunction."

On June 9, 1964, the Comptroller notified the First Security Bank of Utah that its branch application had been approved, but the Comptroller has not, as yet, notified counsel for Plaintiff of his intention to issue the certificate of authority.

The First Security Bank was granted leave to intervene as a party defendant on June 26, 1964.

■ At the outset, the Comptroller contends that the Commercial Security Bank has no standing to bring this suit. The contention can be disposed of by reference to the uncontroverted affidavit of the president of plaintiff bank that if the certificate of authority is issued to the First Security Bank, plaintiff will sustain damage to its business and profits of upwards of fifty thousand dollars a year and plaintiff would have no adequate remedy at law, and by the following holding of our Court of Appeals in Whitney National Bank in Jefferson Parish v. Bank of New Orleans and Trust Company, 116 U.S.App.D.C. 285, 323 F.2d 290, 300 (C.A.D.C., 1963), cert. granted 376 U.S. 948, 84 S.Ct. 967, 11 L.Ed.2d 969:

"The appellee banks cannot complain of lawful competition from other lawfully chartered state or national banks because their own charters are not exclusive licenses. But where, as here, the threatened competition arises from an allegedly illegal facility, the appellee state banks have standing to invoke the jurisdiction of a federal court to challenge the alleged unlawful federal administrative action which admittedly would result in irreparable injury to their property rights in their charters."

■ The Comptroller further contends that his determination, based upon his statutory interpretation of 12 U.S.C.

§ 36(c), should be upheld by this Court unless it is clearly unreasonable. Whatever be the merits of this contention, it is clearly not the law in this Circuit. In both Commercial State Bank of Roseville v. Gidney, D.C., 174 F.Supp. 770, 778, affirmed per curiam 108 U.S.App. D.C. 37, 278 F.2d 871 (1960), and the Whitney National Bank case, supra, 323 F.2d at page 300, the Court stated, " * * * there is no discretion to unlawfully issue a certificate.", and went on to an independent interpretation of 12 U.S.C. § 36(c) and the applicable state law.

The sole question before this Court is whether the Comptroller of the Currency has the statutory authority to grant a certificate to First Security Bank of Utah, N. A., for the establishment of a new branch in the city of Ogden, Utah.

The applicable statutory law primarily involved is clause (1) of Title 12 U.S.C. § 36(c) (1927, as amended), which provides:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town, or village in which said association is situated, *if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question*; * * *". [Emphasis supplied.]

Utah Code Ann., Title 7, Chap. 3, Sec. 6 (1953, as amended), provides as follows:

"Except in cities of the first class, or within unincorporated areas of a county in which a city of the first class is located, no branch bank shall be established in any city or town in which is located a bank or banks, state or national, regularly transacting a customary banking business,

unless the bank seeking to establish such branch shall take over an existing bank. No unit bank organized and operating at a point where there are other operating banks, state or national, shall be permitted to be acquired by another bank for the purpose of establishing a branch *until such bank shall have been in operation as such for a period of five years.*" [Emphasis supplied.]

As stated above, Ogden, Utah, is not a city of the "first class," and there are already located in Ogden four main bank offices and two branch banks. It is clear to this Court at the outset that a state bank would be prohibited from opening a branch in Ogden unless it took over one of the existing banks which had been in operation for at least five years. Thus, if a state bank had applied to the Utah Bank Commissioner for a branch in Ogden under the same conditions which the First Security Bank applied to the Comptroller in this case, the application would clearly have been denied.[1] The question before this Court, therefore, has been narrowed down to whether or not clause (1) of 12 U.S.C. § 36 (c) requires the Comptroller to apply to the establishment of national bank branches exactly the same statutory standards as apply to the establishment of state bank branches.

The defendants argue that if it is at all possible for a state bank to establish a branch in the city in question, then the Comptroller may approve a branch for a national bank, whether or not the national bank meets the specific requirements of a state law which would be applied to the state bank. The plaintiff, on the other hand, argues that the Comptroller must apply the same statutory standards as would be applied to a state bank.

In Commercial State Bank of Roseville v. Gidney, supra, an opinion affirmed by

1. A recent decision of the Supreme Court of Utah, Walker Bank & Trust Co. v. Taylor, 15 Utah 2d 234, 390 P.2d 592 (1964), construed the Utah statute with regard to Provo, Utah, which, like Ogden, is a city of the "second class." The court

there held that under the Utah branch statute, *de novo* branching by a State bank was prohibited in a city of the "second class" even when it was the *only* unit bank in the city.

our Court of Appeals, Judge Youngdahl of this Court held that indeed it was " * * * the apparent purpose of Congress to have *exactly* the same standards—state law—apply to the establishment of national bank branches as apply to the establishment of state bank branches." (174 F.Supp. at page 775). Judge Youngdahl applied a Michigan state court case in granting a preliminary injunction against the Comptroller restraining him from issuing a branch certificate to a national bank in Michigan. The holding was in terms of § 36 (c) generally, though the provision involved in that case, set out in clause (2) of § 36(c), deals only with branches outside of the city in which the main office of the bank is situated.

On the other hand, the learned Judge Christensen of the United States District Court of Utah, Northern Division, recently held that the Comptroller is *not* held to specific conditions of Utah law in granting branches to national banks under clause (1) of § 36(c), that the granting of express authority for branch banking was all that is necessary for the Comptroller to authorize intra-city branch banking by a national bank. Walker Bank & Trust Co. v. Saxon, D.C., 234 F.Supp. 74 (1964). In that case, the defendant national bank, located in a "second class" city, as is the situation in the instant case, was not required to take over an existing bank in order to establish a new branch. The Commercial Bank of Roseville case, supra, as well as other cases emphasizing the controlling effect of the conditions specified by state law, were distinguished as constructions of subsection (c), clause (2). Judge Christensen held that Congress did not intend to apply the same conditions to clause (1) as it did to clause (2) of subsection (c), and he justified this distinction by the difference in language between the two clauses and by reference to legislative history of the enactments of clause (1) in 1927 and of clause (2) in 1933.

After a careful consideration of Judge Christensen's opinion, which seems to be directly in point with the case at hand, and with due deference and respect for its learned brother, this Court feels impelled to reach a different conclusion as to the construction to be given to clause (1) of § 36(c).

It seems clear to the Court that in order for the "dual banking system" of the United States, consisting of state chartered banks and national banks chartered under the National Bank Act of 1864 (now 12 U.S.C.A. §§ 21–213), to continue to function as such, there must be a competitive equality in at least the most important areas of competition between the two systems. If such were not the case, one or the other of the two types of banks, the one with the competitive weight against it, would substantially be driven out of existence, either through failures or conversions to the other class of banking.

Congress has recognized this need for competitive equality in a manner that protects the state banks and national banks at the same time. In many important areas of the National Bank Act, Congress has incorporated state law as the standard for national banks.[2] In this manner, states are permitted to control national banks to a great extent, but the states must apply the same controls to state banks as they do to the national banks.

Prior to 1927, however, there was a serious inequality between state and national banks in the important area of branching. There was no provision for branches in the National Bank Act, and the Supreme Court had made it clear that, except in the case of certain limited and specifically stated exceptions by Congress, national banks had no branch authority whatever. First National Bank in St. Louis v. Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924). Many states at that time did allow branching, however, and as a result, the competitive situation was so imbalanced

2. 12 U.S.C.A. §§ 36(c), 51, 85, 92a(a), and 214c.

that the Comptroller in his 1924 report (Government Printing Office), stated, at page 4:

"The question as to whether national banks may be granted the opportunity to meet the competition of state banks in intra-city branching in my opinion involves the question of the perpetuation of the national banking system."

This situation was the background for the enactment of the McFadden Act of 1927, part of which is now § 36(c), clause (1). That statute also amended the Federal Reserve Act to prohibit new branches outside the corporate limits of the municipality in which the main office was located to state banks which were members of the Federal Reserve System. The purpose of the Act, and this is borne out by a study of the legislative history, was obviously to correct the competitive imbalance. The Banking Act of 1933 removed the above restriction on state member banks and in addition enacted what is now clause (2) of 13 U.S. C.A. § 36(c) (1933, as amended) set out below:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. * * * *"

In spite of the difference in the language of clauses (1) and (2) of subsection (c), this Court feels that the purpose of each was to establish competitive equality, and that the two provisions should, therefore, be interpreted in the same manner.

Thus, this Court feels, in light of the Commercial State Bank of Roseville case, supra, that it is bound to hold that the exact standards of the Utah branching law must be applied to the First Security Bank of Utah, N. A., and that the Comptroller does not possess the statutory authority to authorize the branch in question.

Even if it were not so bound, however, the Court feels that it would come to the same decision in this case. If the Comptroller were permitted at this time to authorize branches for national banks when other banks in the city in question were not at the time and under the same conditions permitted by state law to branch, the Court feels that the purpose of Congress in enacting clause (1) of subsection (c) would not be met. In fact, the grave competitive imbalance which existed before 1927 would only be shifted to the detriment of state banks. Of course, states could prevent this situation by liberalizing their branching laws, but the Court does not feel that this pressure on state legislatures was intended.

Thus, the Court will grant the declaratory judgment that the issuance by the defendant, Comptroller of the Currency, of his certificate evidencing his approval and authorization of the establishment and operation by First Security Bank of Utah, N. A., of Ogden, Utah, of a branch on Harrison Boulevard between 30th and 36th Streets, Ogden, Utah, would constitute a violation of 12 U.S.C.A. § 36. The Court will also enjoin the defendant Comptroller of the Currency from issuing the above certificate of authority.

Accordingly, there being no material issue of fact, and in light of the above opinion, it is by the Court this 18th day of December, 1964,

Ordered, that the Motion to Dismiss filed by defendant Comptroller of the Currency be, and the same hereby is, denied;

Ordered, that the Motion for Summary Judgment filed by the Intervenor-Defendant, First Security Bank of Utah, be, and the same hereby is, denied; and further

Ordered, that the Motion for Summary Judgment filed by the Plaintiff, Commercial Security Bank, be, and the same hereby is, granted.

It is further ordered, that the defendant Comptroller of the Currency be, and he hereby is, enjoined from authorizing the establishment of the branch bank by the First Security Bank of Utah, N. A., which is the subject matter of this cause of action.