**HOOSIER STATE BANK OF INDIANA**

v.

**James J. SAXON, Comptroller of Currency of the United States and the Calumet National Bank of Hammond, Hammond, Indiana, a National Banking Association.**

**Civ. No. 4111.**

United States District Court
N. D. Indiana,
Hammond Division.

Dec. 14, 1965.

---

Harold C. Wagner, Fred A. Malo, Wagner & Malo, Hammond, Ind., for plaintiff.

Irving Goldbloom, Dept. of Justice, Washington, D. C., Wasson Wilson, Hammond, Ind., R. Dickey Hamilton, Chicago, Ill., for Calumet Nat. Bank, for defendant.

BEAMER, District Judge.

Prior to December 29, 1964, Defendant Calumet National Bank applied to the Comptroller of Currency for approval to establish a branch bank near the intersection of Oakley Avenue and Fayette and Russell Streets in Hammond, Indiana. The Comptroller approved Calumet National's application. Plaintiff, Hoosier State Bank has its principal office at 479 State Street, Hammond, Indiana, and is located less than a quarter of a mile from the proposed branch. Plaintiff alleges that the Comptroller's approval was illegal and states that the establishment of the branch will cause irreparable injury and loss of business to the plaintiff. Plaintiff seeks a declaratory judgment that the Comptroller's approval is illegal and that he be ordered to revoke said approval. Plaintiff further seeks a permanent injunction enjoining defendant, Calumet National Bank, from acting under said application and from establishing the proposed branch.

The issues presented by the pending motions are as follows:

(1) Whether or not plaintiff has standing to bring this action;

(2) Whether or not the Comptroller's approval of the proposed National bank branch is legal under the provisions of the National Banking Act; and

(3) Whether or not a factual dispute exists as to the distance between the plaintiff bank and the proposed national branch so as to preclude the rendering of summary judgment in any event.

I. STANDING

█ Defendants assert that plaintiff lacks standing to bring this action to challenge administrative action which merely increases the amount of competition. Numerous cases have held that standing exists if the threatened damage to a complaining bank will result from increased competition which is illegal because in violation of a statutory right. These cases hold that competitive banks have standing to challenge the comptroller's approval of branch banks where such approval is not in accordance with the

provisions of applicable law. See First National Bank of Smithfield v. Saxon, etc., 352 F.2d 267 (4th Cir., Oct. 21, 1965); National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6th Cir. 1958) cert. den. 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 69; Commercial State Bank of Roseville v. Gidney, D.C., 174 F. Supp. 770, aff'd per curiam, 108 U.S. App.D.C. 37, 278 F.2d 871 (1960); Whitney National Bank v. Bank of New Orleans & Trust Co., 116 U.S.App. D.C. 285, 323 F.2d 290 (1963), reversed on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386; Commercial Security Bank v. Saxon, 236 F.Supp. 457 (D.C.1964); First National Bank of Smithfield, N.C. v. First National Bank of Eastern North Carolina, 232 F.Supp. 725 (D.C.N.C. 1964). Thus, if plaintiff has a statutory right to be free from the competition threatened by the proposed branch, plaintiff has standing. The determination of this question depends upon the relevant statutes.

## II. APPLICABILITY OF STATE LOCATION RESTRICTIONS TO NATIONAL BANK BRANCHING UNDER Title 12 U.S.C. § 36 (c) (1).

The authority of the Comptroller to approve applications for the establishment of National Bank branches is defined in Title 12 U.S.C. Section 36(c) (1) which reads as follows:

"The conditions upon which a national banking association may retain or establish and operate a branch or branches are the following: * * *

(c) A national banking association may, with the approval of the Comptroller establish and operate new branches:

(1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and

(2) At any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

Ind.Ann.Stat. 18–1707 (Burns' 1964 Repl.) provides in relevant part as follows:

"No branch bank may hereafter be established or located within one-quarter mile of another bank or trust company, nor at any location which will jeopardize the welfare of another bank or trust company already established in the city or town."

Since the case at bar involves an application by a national bank to "in branch," that is, to open a branch within the city limits of a city in which the national bank is situated, Title 12 U.S.C. § 36(c) (1) is the exact provision involved. Section 36(c) (1) relating to "inside branches" was enacted in 1927 (McFadden Act of 1927) whereas 36(c) (2) relating to "outside branches" was enacted in 1933 (Banking Act of 1933).[1]

Plaintiff contends that state location restrictions on "inside branches" (see Burns' 18–1707 supra) are applicable to national banks which apply for an "inside branch" under 36(c) (1). Plaintiff contends that if a state bank could not open a branch within the city limits at the location of the proposed federal branch, a national bank may not open a branch at such location within the city. Defendants contend that 36(c) (1) relating to "in branching" does not impose state law

---

1. Hereinafter, branches and branching within the city limits of a city in which a national bank is situated pursuant to Sec. 36(c) (1) shall be referred to as "inside branches" and "inside branch-ing". Branches and branching outside of the city limits of a city in which a national bank is situated pursuant to Sec. 36(c) (2) shall be referred to as "outside branches" and "outside branching".

location restrictions as does 36(c) (2) relating to "out branching".

█ The legislative history of these sections persuasively supports plaintiff's contention that the policy and purpose behind both sections was to foster competitive equality between federal and state banks "in at least the most important areas of competition between the two systems" including location restrictions as to branching.

Prior to the 1927 enactment of 36(c) (1), the National Bank Act did not provide for the establishment of branch banks by national banks. As indicated in the legislative history of 36(c) (1), the rapid growth of state bank branching posed a serious threat to the existence of the national banking system. This problem was alleviated to an extent by 36(c) (1) which permitted federal branching within the city limits of a municipality where a federal bank was located if such establishment and operation were at the time expressly authorized to state banks by the law of the state in question. The legislative history of 36(c) (2) indicates a continuing concern for the fostering of the policy of equalization in vital areas of competition. Section 36(c) (2) was enacted in 1933 at a time when many rural state banks were failing. Stronger federal banks were needed to serve these areas. Some even felt that federal branches should be established without regard to any state law restrictions. However, the final version of 36(c) (2) did preserve state law restrictions as to location. The court, therefore, concludes that 36(c) (1) is the only relevant provision concerning "in branching" and 36(c) (2) is the only provision relating to "out branching". The legislative history of these sections supports this conclusion and the further conclusion that the purpose of these sections was to foster equality in vital areas of competition between the two systems. Similar views concerning the purpose and legislative history of these sections have been expressed in numerous cases. See, e. g., Walker Bank and Trust Co. v. Saxon, 10th Cir., 352 F.2d 90, decided October 26, 1965, opinion by Judge Hill; Commercial Security Bank v. Saxon, 236 F.Supp. 457 (D.C. 1964); Jackson v. First National Bank of Valdosta, 5th Cir., 349 F.2d 71 (Sept. 2, 1965); Commercial State Bank of Roseville v. Gidney, supra; National Bank of Detroit v. Wayne Oakland Bank, supra; Suburban Trust Co. v. National Bank of Westfield, 211 F.Supp. 694 (D.C. N.J. 1962).

█ In view of the legislative history of these sections and the language of 36(c) (1) which is controlling in the case at bar, the court is of the opinion that state location restrictions are made applicable to national bank "in branching" under 36(c) (1). The Court cannot accept defendants' argument that the statutory language of 36(c) (1), which permits a national bank to "in branch", that is to open a branch within the city limits of a city in which the national bank is situated, "if * * * such establishment and operation are at the time expressly authorized to State banks by the statute law of the State * * *" means that a national bank can "in branch" if a state bank can "in branch" but the national bank may disregard state law restrictions as to *where* a state bank can "in branch". This court feels that the establishment of federal "inside branches" which violate state law location restrictions on "in branching" cannot be "expressly authorized to State banks by the law of the State in question" as required by 36(c) (1).

The court further feels that nothing in the language of 36(c) (2) warrants a different conclusion. Although it is true that state law location restrictions are expressly made applicable to national bank "out branching" under 36(c) (2) in language which is more specific than 36(c) (1), it does not necessarily follow that such location restrictions were excluded as to "in branching" under 36(c) (1). This is especially true because the language and legislative history of 36(c) (1) compels the conclusion that location restrictions were intended to apply to "in branching." The language and legislative history of 36(c) (2) indicates that

this section was concerned with a different subject matter and was not intended to modify or limit the provisions of 36(c) (1) or to modify or limit the policy of fostering competitive equality in vital areas of competition between state and federal banks. Similar views have been expressed in other cases involving the applicability of state location restrictions under 36(c) (1). See Walker Bank and Trust Co. v. Saxon, supra; Commercial Security Bank v. Saxon, supra; and Jackson v. First National Bank of Valdosta, supra.

The cases of State of South Dakota v. National Bank of South Dakota, 219 F. Supp. 842 (D.C.S.D.1963) and Union Savings Bank of Patchogué v. Saxon, 118 U.S.App.D.C. 296, 335 F.2d 718 (1964) cited by defendants are not controlling for these cases hold only that national banks are not subject to administrative regulations or interpretations as to "out-branching" under 36(c) (2) since the term "statute law" as used in 36(c) (2) includes only state legislative enactments. Defendants also cite Peoples Bank of Trenton v. Saxon, 244 F.Supp. 389, a district court opinion decided January 27, 1965 in the United States District Court for the Eastern District of Michigan. The court held that state law requirements of "necessity" for the branch and "good prospects" of its success did not apply to a national bank "outside branch" since 36(c) (2) specifically states that state law location and capitalization restrictions do apply to such branching, the implication being that other state law restrictions do not apply under 36(c) (2). The court feels that the Trenton case is both distinguishable from the case at bar and not necessarily inconsistent with the views expressed herein. Moreover, the location requirement is the very heart of the right to branch granted by the Indiana Statute. To say that a national bank may ignore the location requirements of the Indiana Statute would completely emasculate the provision of Section 36(c) (1) which permits national bank "in branch-

ing", "if such establishment and operation are *expressly authorized* to State banks by the law of the State in question," because the "in branching" here involved is *expressly prohibited* by the Indiana Statute which says that "no branch bank may hereafter be established or located within one-quarter mile of another bank or trust company". (emphasis added)

For the above reasons, the court holds that the Indiana location restriction is applicable to national bank branching under 36(c) (1).

III. NON-EXISTENCE OF ANY FACTUAL ISSUE UNDER INDIANA ANNOTATED STATUTE 18–1707 (Burns' 1964 Replacement)

The uncontroverted affidavit of John F. Wilhelm, President of the Hoosier State Bank, together with an attached map indicate that the proposed National Bank branch is within 700 feet of the Hoosier State Bank. In addition, the proposed branch is within 798 feet of the Hoosier State Bank by the most direct and travelled highway.

Defendants contend that even if plaintiff prevails on the legal issues noted above, a factual issue will still remain because Burns' 18–1707, when reasonably interpreted, imposes a quarter-mile restriction only where the proposed branch might pose a real competitive threat to an established banking office and not when there are substantial barriers between the two banking offices. Since railroad lines and barriers exist between the two banking offices, defendant contends a material issue of fact exists.

The relevant provision of Indiana law noted above, reads as follows:

"No branch bank may hereafter be established or located within one quarter mile of another bank or trust company, *nor* at any location which will jeopardize the welfare of another bank or trust company already established in the city or town. * * *" (emphasis added)

**238**

The plain meaning of this language, particularly in view of the disjunctive "nor", indicates that either the opening of a branch within the quarter mile distance or the opening of a branch which will jeopardize another bank is prohibited. The two prohibitions are clearly separate and defendants' argument is without merit because it requires an unwarranted and unreasonable construction of the statute.

Since state location restrictions are applicable to national bank branching under 36(c) (1) and since the proposed branch violates the quarter-mile location restriction noted above, plaintiff's motion for summary judgment must be granted.