**GEORGIA ASSOCIATION OF INDE-
PENDENT INSURANCE AGENTS,
INC.**

and

**Gerry R. Holden, Jr., Walter H. McGee,
Charles A. Simons, Howard C.
Kearns, Jr.**

v.

**James J. SAXON, Comptroller of the Cur-
rency of the United States of
America.**

**Civ. A. No. 9846.**

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 21, 1966.

Gambrell, Harlan, Russell & Moye, At-
lanta, Ga., for plaintiffs.

Charles L. Goodson, U. S. Atty., Slaton
Clemmons, Asst. U. S. Atty., Atlanta,
Ga., for defendant.

MORGAN, Chief Judge.

The plaintiffs in the above-styled ac-
tion seek a declaratory judgment and
injunction against allegedly illegal acts
by the defendant James Saxon. The de-
fendant has filed a motion to dismiss on
the grounds that the plaintiffs lack
standing to bring the instant action.

It is first necessary to review the
factual background within which the mo-
tion to dismiss is made. Title 12, U.S.
C.A. § 92 authorizes national banks
which are located in places with a popula-
tion of *5,000 or less* to act as insurance
agents under rules and regulations pre-
scribed by the Comptroller. The defend-
ant has issued a ruling which allows na-
tional banks in cities of *any* size to act
as insurance agents for the purpose of
writing insurance which is incidental to
banking transactions.

The plaintiffs are independent insur-
ance agents and organizations which rep-
resent the collective interests of such
independent insurance agents. These
plaintiffs allege that the defendant
Comptroller is without authority to issue
such a ruling, that such a ruling is in
violation of Title 12, U.S.C.A. § 92, and
that the result of such ruling is to imple-
ment unauthorized and illegal competi-
tion which, in effect, has caused and is
continuing to cause financial injury to
them.

The defendant takes the position that,
regardless of the validity of the plain-
tiffs' allegations, the plaintiffs have no
standing to bring the present action.

First, it must be noted that the Courts
have developed no single formula which
can be applied to a set of facts to deter-
mine whether an aspiring plaintiff has
"standing". Upon occasion the Courts
have spoken in terms of substantial or
sufficient interest as to confer standing,
but it must be realized that in doing so
no clearly delineated standard has been
announced, but, rather, that the Court
was speaking in terms of result. If the

plaintiff is deemed to have standing, it is said that he has a "sufficient interest" to confer standing, while if it is determined that this particular plaintiff has no standing, his interest is deemed to be insufficient. Thus, "sufficient interest" is a phrase of art utilized to denote the result reached by a Court in its determination regarding standing, and does not provide the guidelines necessary in a determination of whether a particular individual has standing.

Thus, the Court is left in the position of having no alternative but to examine the plaintiffs' position in the case at hand in the light of the long line of cases which hold that a particular plaintiff had standing on one hand, and on the other, with an eye to the equally long line of cases where a plaintiff was deemed not to have standing.

The defendant relies principally on the numerous cases which arose pursuant to the congressional creation of the Tennessee Valley Authority. See Tennessee Electric Power Co. v. T.V.A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1938).

In Tennessee Power Company, supra, and in Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1937), the plaintiffs alleged that they were suffering economic loss from the government-created competition. In both cases the Supreme Court held that such economic loss alone did not confer standing on the aspiring plaintiffs. It is important to note that such competition was authorized by Congress and was based upon statutory grounds.

In the instant case, the competition complained of is not explicitly authorized by statute, but rather is impliedly prohibited by the congressional grant of the power to act as an insurance agent in cities of *5,000 or less* population. Title 12, U.S.C.A. § 92.

Thus, the two cases referred to above do not appear to be dispositive of the instant case, as in each of those cases the Court was dealing with competition which was statutorily authorized; whereas, in the case now before this Court, the competition is surely not explicitly authorized but rather is impliedly prohibited.

In the *Alabama Power Company* case, supra, the Supreme Court recognized this distinction between authorized and unauthorized competition. Speaking in terms of legal and illegal competition, the Court distinguished *Alabama Power Company* from an earlier case in which it had held that the plaintiff did have standing. "The difference between the *Frost* case and this is fundamental; for the competition contemplated there was *unlawful* while that of the municipalities contemplated here is entirely *lawful."* 302 U.S. 464, p. 484–485, 58 S.Ct. 300, p. 306.

The case of Frost v. Corporation Comm'n, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), discussed by the Supreme Court in making the distinction between *legal* and *illegal* competition, has served as the basis for numerous decisions which have held that injured competitors have standing to attack rulings made by the Comptroller of the Currency.

In Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F. 2d 290 (1963), rev'd on other grounds 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), it was held that a state bank had standing to attack the Comptroller's order authorizing a national bank to establish a new branch in competition with the state bank, where the state bank contended that the Comptroller's order violated Title 12, U.S.C.A. § 36 of the National Banking Act and illegal competition would ensue. The same result regarding standing to challenge an allegedly illegal order of the Comptroller has been reached in numerous other cases. First National Bank of Smithfield, North Carolina v. Saxon, 4 Cir., 352 F.2d 267 (1965); National Bank of Detroit v. Wayne Oakland Bank, 6 Cir., 252 F.2d 537, cert. den. 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 69 (1958); Commercial State Bank of Roseville v. Gidney, D.C., 174 F. Supp. 770 (1959), aff'd 108 U.S.App.D.C. 37, 278 F.2d 871 (1960); Commercial

Security Bank v. Saxon, D.C., 236 F. Supp. 457 (1964); Farris v. Indian Hills National Bank, D.C., 244 F.Supp. 594 (1964); Hoosier State Bank v. Saxon, D.C., 248 F.Supp. 233 (1965); Bank of Sussex County v. Saxon, D.C., 251 F. Supp. 132 (1966).

The defendant seeks to distinguish this long line of cases from the instant one on the ground that these cases have held that *banks*, not insurance agents, have standing to challenge orders of the Comptroller which are allegedly illegal.

Such a distinction is tenuous at best, for the above-cited cases were brought under Section 36 of the National Banking Act which has the effect of protecting banks from certain competition by other banks. The instant case is brought under Section 92 of the Banking Act which has the effect of protecting certain insurance agents from competition by banks. Specifically, 12 U.S.C.A. § 92 has the effect of protecting insurance agents in places of over 5,000 population from competition from banks.

Thus, the section of the Banking Act under which the line of cases sought to be distinguished by the defendant arose protects banks, while the section of the Act under which the instant case arose protects insurance agents. Therefore, it is reasonable to conclude that if banks which are threatened with allegedly illegal competition have standing to protect their rights conferred by 12 U.S.C.A. § 36, insurance agents have standing to protect their interests in the enforcement of 12 U.S.C.A. § 92.

The defendant further contends that under 12 U.S.C.A. § 93, the Comptroller is sole enforcer of the National Banking Act. This contention is impliedly repudiated by the repeated decisions that banks have standing to challenge an allegedly illegal order under 12 U.S.C.A. § 36, and was explicitly repudiated in an opinion by the Fifth Circuit Court of Appeals which stated: "The fact that the Comptroller is charged under 12 U.S.C. § 93 with the duty of enforcing the National Bank Act certainly does not have the effect of prohibiting actions to enforce that law by any other party who might have a legitimate interest." Jackson v. First National Bank of Valdosta, 349 F.2d 71 (1965) at p. 75.

 Thus, the Court is of the opinion that the defendant's attack on the plaintiffs' standing is without merit. Title 12, U.S.C.A. § 92 has the effect of protecting insurance agents from certain competition. Surely, the plaintiffs have the right to their day in court to show that the protection afforded them by 12 U.S.C.A. § 92 has been violated.

If banks have standing to attack allegedly illegal competition under 12 U.S. C.A. § 36, it would appear that insurance agents have the analogous right to attack allegedly illegal competition under 12 U.S.C.A. § 92.

Therefore, the defendant's motion to dismiss for lack of standing is denied.

It is so ordered.