**ASSOCIATION OF DATA PROCESSING SERVICE ORGANIZATIONS, INC., and Data Systems, Inc., Plaintiffs,**

v.

**William B. CAMP, Comptroller of the Currency of the United States and American National Bank and Trust Co., Defendants.**

**No. 3–67 Civ. 165.**

United States District Court
D. Minnesota,
Third Division.

Jan. 9, 1968.

Shanedling, Phillips, Gross & Aaron, by Bert M. Gross and Felix M. Phillips, Minneapolis, Minn., appeared for plaintiffs.

Patrick J. Foley, U. S. Atty., by Stanley H. Green and C. Westbrook Murphy, Department of Justice, Washington, D. C., appeared for defendant Comptroller William B. Camp.

Kelly, Segell & Fallon, by Fallon Kelly and Hyam Segell, St. Paul, Minn., appeared for defendant American National Bank & Trust Company.

Matthew Hale, Washington, D. C., appeared amicus curiae for American Bankers Association.

NEVILLE, District Judge.

This matter comes before the court on motions by both defendants for an order of dismissal, grounded upon the alleged lack of standing in the plaintiffs to maintain the present action. Plaintiffs' complaint seeks a declaratory judgment, an injunction and compensatory damages, all on the theory that the marketing of data processing [1] to the public by defendant American National Bank is illegal and contrary to law. The complaint further avers that certain actions of the defendant Comptroller in approving the marketing of data processing services by national banks is "arbitrary, capricious, an abuse of discretion, in excess of statutory authority and illegal." The plaintiffs in essence seek a determination that the performing for a fee of data processing services by national banks for the public generally, or what were referred to on oral argument as "outsiders", is not within the scope of the powers and authority granted national banks under the National Bank Act as set forth in 12 U.S.C. § 24. The pertinent provisions of this statute read as follows: ···

"§ 24. Corporate powers of associations.

Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

\*   \*   \*   \*   \*   \*

Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, *all such incidental powers as shall be necessary to carry on the business of banking;* \* \* \*." (Emphasis added)

The allegation in the complaint as to the defendant Comptroller's administrative ruling is in general terms as follows:

"7. The defendant COMPTROLLER has by ruling and other administrative action authorized defendant AMERICAN BANK and other national banks to perform the data processing services hereinafter described." [2]

---

1. As brought out in the oral arguments, data processing utilizes electronic devices, including what are commonly known as computers, to compile and calculate statistical information and is employed by businesses in the computation and preparation of payrolls, tax returns, monthly statements, bills and in other ways.

2. It appears from the brief submitted by the Comptroller that his position with respect to the furnishing of electronic data processing services by national banks was published as an interpretive ruling in the March 1964 supplement to the *Comptroller's Manual for National Banks,* paragraph 3500 of which reads as follows:

"A national bank may make available for the use of others processing equipment acquired for the primary pur-

The plaintiff Association of Data Processing Service Organizations, Inc., ("ADAPSO") is an incorporated association of data processing service organizations located throughout the United States whose members are engaged in the business of providing such type of service to the business community. Plaintiff Data Systems, Inc. is a Minnesota corporation with offices in Minneapolis, Minnesota, engaged in the business of marketing and performing data processing service for the general business community, and is a member of ADAPSO.

The alleged injury to these plaintiffs resulting from the actions of the defendants is claimed to be solely an economic injury arising from what is contended to be illegal competition.[3]

The plaintiffs assert that they have standing to challenge the action of the Comptroller by virtue of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The pertinent section of this Act, § 702, provides that:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. * * * "

■ Since there are no specific provisions in the National Bank Act providing for a review of the Comptroller's rulings or conferring standing to maintain such actions as the instant case, it would appear that if the plaintiffs are to have what is called statutory standing at all, such must be grounded upon the above-quoted portion of the Administrative Procedure Act. The Eighth Circuit Court of Appeals however has adhered strongly to the view that the Administrative Procedure Act did not by its passage create any legal rights which did not otherwise exist and has cited numerous authorities in support thereof. Rural Electrification Admin. v. Northern States Power Co., 373 F.2d 686, 692 (8th Cir. 1967). Quoted particularly in this case is Duba v. Schuetzle, 303 F.2d 570, 574 (8th Cir. 1962), to the effect that:

"It has also been judicially determined that the Administrative Procedure Act was not designed to and in fact has not changed the basic principle that one must have suffered a *legal wrong* in order to have standing to challenge programs administered by governmental agencies. [Citing many cases]"

The result is that in determining whether or not plaintiffs have standing this

pose of performing service incidental to banking."
A later modification of this same paragraph, adhered to by the present Comptroller, appears in the *Comptroller's Manual* (October 15, 1966 ed.) in the following language:
"Incidental to its banking services, a national bank may make available its data processing equipment or perform data processing services on such equipment for other banks and bank customers."

3. Paragraph 11 of the complaint of plaintiffs charges:
"As a result of defendant Comptroller's action, the marketing of data processing services by national banks has been growing rapidly, and is anticipated to grow even more rapidly in the future. Because of the enormous financial power of national banks and their banking relationships with existing and potential customers for such services, the marketing of such services by national banks threatens ultimately to exclude all ADAPSO members and other independent service organizations from all or a very substantial part of the market for the sale of data processing services."
The complaint goes on to allege that the plaintiff Data Systems had entered into negotiations in Minnesota with two particular potential customers to provide data processing service. It is stated that the defendant American National Bank and Trust Company subsequently made agreements with the same two potential customers for the performing of data processing service, thus depriving Data Systems of the right and opportunity to perform such service and to be compensated therefor.

case must be considered without there being in existence any statutory right to judicial review. That is to say, the National Bank Act does not have within itself any provisions for court review, such for instance as the Internal Revenue Code or the Interstate Commerce Act, and it is clear that the Administrative Procedure Act does not and did not append such in effect to this Act so as to create a specific provision for judicial review.

There is a long and well established line of judicial authority holding plaintiffs whose only injury is loss of competition lack standing to maintain legal action to redress their economic injury. These decisions hold that mere competitive injury even though resulting from governmental action does not give standing to a person so injured to seek relief in the courts. Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955), cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955); Texas State AFL–CIO v. Kennedy, 117 U.S.App.D.C. 343, 330 F.2d 217 (1964); Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719 (1956), cert. denied 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 324; United Milk Producers of New Jersey v. Benson, 96 U.S.App.D.C. 227, 225 F.2d 527 (1955); Pennsylvania Railroad Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292 (1964); Rural Electrification Admin. v. Central Louisiana Elec. Co., 354 F.2d 859 (5th Cir. 1966).

So in Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939), the court laid down the rule that one threatened with injury by governmental action may not contest such in the courts "unless the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege."

Plaintiffs in the case at bar have not lost nor had threatened any property interest (loss due to competition clearly not qualifying as such under the above cases); they do not allege any contract breach nor tortious action and it is clear as above set forth that neither the National Bank Act nor the Administrative Procedure Act are statutes conferring any specific privilege on plaintiffs. Plaintiffs do not have any governmentally granted license or franchise which is impaired by defendants' actions.

No purpose will be served in this opinion by reviewing the detailed facts of the above cited cases. Their rationale seems to be this: The United States is a country dedicated to free enterprise. If A invests his money in a business, a grocery store for instance,[4] he cannot complain legally if another man, B, opens

---

4. In Alabama Power Co. v. Ickes, 302 U.S. 464, 481, 58 S.Ct. 300, 304, 82 L.Ed. 374 (1938), the court said:

"John Doe, let us suppose, is engaged in operating a grocery store. Richard Roe, desiring to open a rival and competing establishment, seeks a loan from a manufacturing concern which, under its charter, is without authority to make the loan. The loan, if made, will be *ultra vires*. The state or a stockholder of the corporation, perhaps a creditor in some circumstances, may, upon that ground, enjoin the loan. But may it be enjoined at the suit of John Doe, a stranger to the corporation, because the lawful use of the money will prove injurious to him and this result is foreseen and expected both by the lender and the borrower, Richard Roe? Certainly not, unless we are prepared to lay down the general rule that A, who will suffer damage from the lawful act of B, and who plainly will have no case against B, may nevertheless invoke judicial aid to restrain a third party, acting without authority, from furnishing means which will enable B to do what the law permits him to do. Such a rule would be opposed to sound reason, as we have already tried to show, and cannot be accepted."

next door to him and he, A, loses his investment because of the competition. Economic injury due to competition is not an actionable legal wrong. Even assuming that B did not file proper incorporation papers or income tax returns, or borrowed his money from someone who lent it to him ultra vires, or agreed to pay usurious interest for borrowed money, or obtained his groceries illegally, still A as a competitor has suffered no judicially cognizable wrong.[5] The above reasoning applies where the competitor is the United States Government, i. e., in the public power field or more frequently where the government has enhanced competition by financial aid or grants to a competitor, even though the government may not have followed to the letter all of the requirements, or may have exceeded the restrictions and proscriptions of the Act of Congress creating or permitting its action.[6]

A further reason sometimes assigned for denying standing is that to allow such would permit some citizen or taxpayer who claimed a "public interest" or who desired to act as a "private attorney general" to challenge in court every action of the government.

Less than a year ago the Court of Appeals for the Eighth Circuit in a lengthy opinion adopted the rationale of the above cited cases. Rural Electrification Admin. v. Northern States Power Co.,

373 F.2d 686 (8th Cir. 1967), cert. denied 387 U.S. 945, 87 S.Ct. 2079, 18 L. Ed.2d 1332 (1967). This decision binds this court and thus requires a dismissal of plaintiffs' complaint.

Of the several cases relied on by plaintiffs, most of them are distinguishable and not applicable to the case at bar. Several relate to situations where the federal or state governments have recognized that a particular field of competition is subject to regulation and restriction as to the number who may engage in such business, e. g., where for the benefit of the public, totally free and unrestrained competition in the banking field, is not desirable and should be confined. So, when a plaintiff already has a license or franchise to engage in such a field of business, the prospective entry of another into the same field has been held to give plaintiff standing to demand judicial review. Accordingly standing has been allowed to challenge the Comptroller's action in chartering a new national bank or a new branch of a national bank. National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6th Cir. 1958); Hoosier State Bank of Indiana v. Saxon, 248 F.Supp. 233 (N.D. Ind.1965); Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963); Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir.

5. "The appellants further argue that * * * they may, by suit, challenge the constitutionality of the statutory grant of power the exercise of which results in competition. This is but to say that if the commodity used by a competitor was not lawfully obtained by it the corporation with which it competes may render it liable in damages or enjoin it from further competition because of the illegal derivation of that which it sells. If the thesis were sound, appellants could enjoin a competing corporation or agency on the ground that its injurious competition is *ultra vires*, that there is a defect in the grant of powers to it, or that the means of competition were acquired by some violation of the Constitution. The contention is foreclosed by prior decisions that the damage consequent on competition, otherwise lawful, is in such circumstances *damnum absque injuria*, and will not support a cause of action or a right to sue." Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 139–140, 59 S.Ct. 366, 370 (1939).

6. " * * * When Congress has not given them any such standing by express or implied provision of statute * * *, mere economic competition made possible by governmental action (even if allegedly illegal) does not give standing to sue in the courts to restrain such action. * * * For purposes of standing in this case, the sufficiency of appellants' allegations of 'legal wrong' thus depend upon congressional intent to bestow upon them a legal right to protection from such competition." Pennsylvania Railroad Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, 294–295 (1964).

1966). In these cases an existing bank was the challenger in a field where, for the benefit of the public, the number who are allowed in competition is limited. A grocery store or data processing company failure or bankruptcy would be unfortunate and cause the proprietors and owners to lose their investment, but a bank failure would cause not only loss of the owner's investment but also loss to many unwary members of the public who are depositors. For this reason competition is limited as to the number who can engage in this business. Thus in the interest of the public one already in this field has standing to challenge a proposed new entrant.

In accordance with this same general philosophy is F. C. C. v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), allowing a competing radio station standing in the public interest to challenge an order granting a certificate to a new station.

The case of Georgia Ass'n of Ind. Ins. Agents, Inc. v. Saxon, 260 F.Supp. 802 (N.D.Ga.1966), involved a section of the National Bank Act (12 U.S.C. § 92) permitting the sale of insurance by national banks located in towns of 5,000 population or less. Insurance agents were allowed standing judicially to question the Comptroller's ruling granting certain authority to write insurance by national banks in cities of any size, on the grounds that this statute by clear implication was intended to protect a class, i. e., certain insurance agents and representatives. Thus standing existed in any member of this class. There is no such statute protecting data processors.

In this same category is Investment Company Institute v. Camp, 274 F.Supp. 624 (D.D.C.1967), where a national bank instituted a collective investment fund. Plaintiff association sought to restrain the Comptroller from authorizing such. Plaintiff was held to have standing in view of the specific wording of the National Bank Act which by its language segregated generally national commercial banking from the securities business, thus creating a protected class. Cf. National Ass'n of Securities Dealers, Inc. v. Securities and Exchange Commission, (Case No. 20,164, D.C.Cir., decided November 21, 1967), denying standing involving the same bank in a somewhat differing controversy.

As to Baker, Watts & Co. v. Saxon, 261 F.Supp. 247 (D.D.C.1966), it can only be said that it seems contrary in its philosophy and holding to the Eighth Circuit holding in Rural Electrification Admin. v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967), cert. denied 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967). Perhaps the same can be said of some of plaintiffs other cases. Even those distinguished hereinabove fundamentally adopt or lean toward the *Baker, Watts,* supra, approach and rationale. Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966), as an Eighth Circuit case, predates Rural Electrification Admin. v. Northern States Power Co., supra, by slightly more than a year and though it has language which would seem to support plaintiffs' contentions, it was distinguished by the court itself in the Rural Electrification Admin. v. Northern States Power Co., case and classified as illustrative of the type of case where an existing licensee in a regulated competitive field has standing where it offers to prove detriment to the public interest by the potential entrance of a new competitor.

Certain other cases are difficult to reconcile. As stated in Rural Electrification Admin. v. Northern States Power Co., 373 F.2d 686, 692 (8th Cir. 1967):

"Although concepts of standing, judicial reviewability and justiciable controversy are intermingled in the area of administrative review, our analyses compels reversal under any or all of these jurisdictional bases. Appellees' brief well demonstrates isolated statements and cases dealing with agency review are not all simply reconciled. * * * *"

There is the view relied on by plaintiffs that actions of government officials ought to be rather freely judicially reviewable; that public officials ought to

be subject to some rein by the court.[7] Davis in his textbook on Administrative Law, Chapter 22, and specifically § 22.18 takes particular issue with the federal cases denying standing and sets forth in the Chapter numerous reasons therefor.

Apart from all of the above, the rule in this Circuit seems clear from the teachings of Rural Electrification Admin. v. Northern States Power Co., supra. Such binds this court.

A separate order granting defendants' motions to dismiss plaintiffs' complaint has been entered.

---

7. In Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans, 379 U.S. 411, 427, 85 S.Ct. 551, 561, 13 L.Ed.2d 386 (1965), the dissenting justice (quoted in Webster Groves Trust Co. v. Saxon, supra) stated:

"* * * absent a congressional design to bar all judicial review * * * injunctive relief is available where administrative remedies are either inapplicable or inadequate. This rule keeps the Comptroller from being a free-wheeling agency dispensing federal favors; and it gives some assurance that he will render principled decisions within the rule of law laid down by Congress."