**ARNOLD TOURS, INC., et al., Plaintiffs,**

**v.**

**William B. CAMP, Comptroller of the Currency of the United States, and South Shore National Bank, Defendants.**

**Civ. A. No. 67-372.**

United States District Court
D. Massachusetts.

July 11, 1968.

Timothy J. Murphy, Boston, Mass., for plaintiffs.

Arthur H. Bloomberg and Elliott V. Grabill, Grabill, Ley & Butterworth, Boston, Mass. for defendant South Shore National Bank; Westbrook Murphy, office of Comptroller of the Currency, Michael R. Lemov, Department of Justice, Washington, D. C. and Paul F. Markham, U. S. Atty., Boston, Mass. for defendant William B. Camp.

## OPINION

CAFFREY, District Judge.

This is a civil action in which 42 named plaintiffs, each engaged in the travel agency business, (i. e., acquiring from any source travel reservations or accommodations; tickets for travel by air, sea, bus, or train; hotel, motel, and other lodging accommodations and reservations; and other related services), seek declaratory and injunctive relief against the Comptroller of the Currency and the South Shore National Bank. More particularly, plaintiffs seek a declaration that certain rulings by the Comptroller authorizing national banks to engage in the travel agency business are illegal, null and void, and they seek an order enjoining the Comptroller from authorizing the South Shore National Bank, or any other national bank, to engage in the travel agency business.

The 42 named plaintiffs purport to bring this action as a class action on behalf of all other Massachusetts travel agencies, approximately 250 in number. Jurisdiction of this court is based on 28 U.S.C.A. §§ 1331, 1361, 2201 and 2202, and 5 U.S.C.A. § 1009.

The matter came before the Court on cross-motions for summary judgment filed by plaintiffs and by both defendants. In the course of oral argument of these motions all counsel agreed that there is no issue of material fact before this Court, and each party claimed it is entitled to prevail as a matter of law. The complaint alleges that:

"The action of the Comptroller of the Currency which permitted the defendant, South Shore National Bank, to acquire and maintain a travel department is an illegal activity, and has subjected the plaintiffs to unlawful competition.

"The Comptroller has illegally authorized national banks to engage in the travel agency business through formal rulings contained in the Comptroller's Manual for National Banks, paragraphs 7376 and 7475. These illegal rulings are based on Title 12 U.S.C. sec. 24, paragraph 7, which empowers national banks to perform 'all such incidental powers as shall be necessary to carry on the business of banking.' The travel agency business is not incidental to the banking business, and thus the Comptroller's ruling is arbitrary, capricious, void, and in excess of his authority."

The complaint further alleges:

"The South Shore National Bank of Quincy, Massachusetts, with twenty-seven branches in surrounding areas, is the first national bank in Massachusetts to engage in the travel agency business. * * *

"The South Shore National Bank has seriously injured and damaged the above-named plaintiffs. * * * Many customers of the plaintiffs have changed their business to said bank because of its convenient financing facilities.

"The Comptroller's action creates for the plaintiffs, and others similarly situated, a type of illegal competition which deprives and will deprive the plaintiffs, and others similarly situated, of legitimate business and opportunities for profit in the travel agency business. * * * and

"The plaintiffs have no adequate remedy at law * * *"

On the basis of the lengthy memoranda of law and the oral argument of counsel, it is clear that plaintiffs' basic contention herein is that the Comptroller has exceeded his statutory authority in the rulings under attack, by authorizing national banks to engage in a type of activity which plaintiffs contend does not come within the permissive language of subparagraph 7 of 12 U.S.C.A. 24:

"It shall have power * * * 7th, to exercise * * * all such incidental powers as shall be necessary to carry on the business of banking."

It is equally clear that defendants' motion for summary judgment is based essentially on the grounds (1) that plaintiffs do not have standing to maintain this action, under a well-settled line of

decisions of the Supreme Court of the United States, and (2) that, in any event, defendants are entitled to judgment because national banks are authorized to render travel agency services to the public since the enactment of the National Bank Act in 1864.

The National Bank Act contains no specific provisions for judicial review of the Comptroller's rulings, nor does it purport to specifically confer standing on any private parties, such as plaintiffs, to maintain an action of this type. Thus, plaintiffs find themselves in the position of private litigants seeking to enjoin allegedly unlawful economic competition. Plaintiffs do not allege that the conduct of defendant bank or of the Comptroller is tortious, in breach of any contract, or violative of any of the anti-trust laws of the United States. Plaintiffs likewise are unable to allege that this action is founded on any statute of the United States which grants to plaintiffs immunity from competition. Plaintiffs do not allege that they are members of any class which is the beneficiary of protective legislation, nor do they claim the advantages flowing from any federally granted license, franchise, or monopoly.

In the absence of any of these allegations, which might give plaintiffs standing to maintain this action, their claim cannot survive the decisions of the Supreme Court holding that a party lacks standing to maintain a legal action where the only claimed financial loss is due to economic competition. In Perkins v. Lukens Steel Co., 310 U.S. 113, at p. 125, 60 S.Ct. 869, at p. 875, 84 L.Ed. 1108 (1939), the Supreme Court observed:

"It is by now clear that neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such."

In so doing, the Supreme Court was reaffirming what it had said a year earlier, in Tennessee Electric Power Co. v. TVA, 306 U.S. 118, at p. 137, 59 S.Ct. 366, at p. 369, 83 L.Ed. 543 (1938), at p. 137:

"The appellants invoke the doctrine that one threatened with direct and special injury by the act of an agent of the government which, but for statutory authority for its performance, would be a violation of his legal rights, may challenge the validity of the statute in a suit against the agent. The principle is without application unless the right invaded is a legal right, one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege."

To the same effect see Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1937); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (1955), cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780; Pennsylvania Railroad Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292 (1964).

Standing is not conferred on plaintiffs by the Administrative Procedure Act, 5 U.S.C.A. § 702, which has been construed to do nothing more than to continue the traditional requirements of standing by the provision that

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

See Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1962); Rural Electrification Administration v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967), cert. denied 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967). See also, Association of Data Processing Service Organizations, Inc. v. Camp, 279 F.Supp. 675 (D.Minn. 1968).

Nor is standing conferred on plaintiffs by the line of cases cited in their brief, such as Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L. Ed. 483 (1929); Georgia Assn. of Independent Insurance Agents v. Saxon, 260 F.Supp. 802 (N.D.Ga.1966), 268 F. Supp. 236 (1967); Baker, Watts & Co. Watson v. Saxon, 261 F.Supp. 247 (D.C. D.C.1966), appeal pending; Investment

Co. Institute v. Camp, 274 F.Supp. 624 (D.C.1967). Each of these cases involves either a franchise (Frost v. Corporation Commission, supra), specific legislation creating a legal right in the plaintiff therein (Georgia Assn. of Independent Insurance Agents v. Saxon, supra), or making the plaintiff therein a member of a statutorily protected class (Investment Co. Institute v. Camp, supra). Plaintiffs have failed to show that any of these special considerations obtain in the instant case, which purely and simply seeks to enjoin unwanted economic competition.

I do not reach the other grounds relied on by the defendants in their motion for summary judgment, since it is clear that plaintiffs lack standing to maintain this action and it must be dismissed.

Judgment accordingly.